# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 5, 2011

No. 10-50137

Lyle W. Cayce
Clerk

TEWARI DE-OX SYSTEMS, INC.,

Plaintiff–Appellant

v.

MOUNTAIN STATES/ROSEN, L.L.C.,

Defendant–Appellee

Appeal from the United States District Court
for the Western District of Texas

Before BARKSDALE, CLEMENT, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Tewari De-Ox Systems, Inc. ("Tewari") allegedly owns trade secrets related to a meat-packing method that creates a zero parts-per-million ("ppm") oxygen-storage atmosphere. Dr. Gustav Tewari, Tewari's President and CEO ("Dr. Tewari"), visited Mountain States/Rosen, L.L.C. ("MTSR"), a company that sells fresh cuts of lamb to retail stores, and demonstrated Tewari's meat-packing method and trade secrets to MTSR after MTSR signed a nondisclosure agreement ("NDA"). Tewari later came to believe that MTSR misappropriated its trade secrets, and brought suit against MTSR for (1) breach of contract; (2) misappropriation of trade secrets; (3) violation of the Texas Theft Liability Act; (4) breach of fiduciary duty; and (5) fraud and fraudulent inducement.

No. 10-50137

MTSR moved for summary judgment on all of Tewari's claims, which the district court granted with respect to Tewari's fraud and fraudulent inducement claim and denied in all other respects. Tewari moved for summary judgment on its breach of fiduciary duty claim, which was denied. Thereafter, the district court on reconsideration granted MTSR's motion for summary judgment in full, ruling that Tewari disclosed its trade secrets in a 2004 patent application and that it failed to raise a fact issue as to the existence and use of a trade secret. Tewari appeals the entry of summary judgment against it, the district court's refusal to rule on an element of its breach of fiduciary duty claim on Tewari's motion for summary judgment, and the district court's failure to sua sponte enter summary judgment in favor of Tewari that at least one trade secret was disclosed to MTSR. We affirm in part and reverse in part and remand.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Tewari develops and markets a zero ppm oxygen meat-packing method (the "zero oxygen" method or system) for packing fresh meat for shipment and display in retail stores. The precise manner in which fresh meat is packaged for shipment and retail display is fairly complex, but the general process involves, *inter alia*, placing the meat on individual trays and covering them (typically with plastic film), putting multiple meat trays in a plastic bag, adding an oxygen scavenger to absorb residual oxygen, flooding the bag with a gas to eliminate as much oxygen as possible from the bag, and sealing the bag. Tewari's method is supposedly unique in many respects, including the use of special iron-based self-activated oxygen scavengers, special "barrier" or "master" bags, and a particular type or mixture of gases, all to achieve zero ppm oxygen—a uniquely low level of oxygen—in a uniquely short amount of time. Tewari also alleges its trade secrets include knowledge about how the shelf-life of various meat types and cuts can be extended and how to adapt the Tewari process to an "open nozzle"

2

No. 10-50137

system of meat packing, which has a higher level of initial oxygen than other meat-packing processes.

In 2005, MTSR contacted Tewari to see if Tewari's zero ppm meat-packing method could help it increase the shelf life of its case-ready cuts of lamb. After Tewari and MTSR signed the NDA, Dr. Tewari demonstrated Tewari's product to MTSR, in which he claims he revealed trade secrets related to Tewari's meat-packing method. Afterward, MTSR allegedly misappropriated those trade secrets, and Tewari sued. After extensive discovery, MTSR filed for summary judgment on all of Tewari's claims, arguing, *inter alia*, that Tewari did not have any trade secrets. In opposition to MTSR's motion, Tewari filed an affidavit in which Dr. Tewari avers that he disclosed five trade secrets to MTSR in March 2005. MTSR filed seventeen pages of objections to Tewari's proffered evidence including Dr. Tewari's affidavit, which contained Dr. Tewari's definitions of the trade secrets he claims to have disclosed to MTSR.[1] Tewari sought leave to file a response to the objections, which was later denied as moot. Tewari also filed its own motion for partial summary judgment on its fiduciary duty claim.

The district court granted MTSR's motion for summary judgment as to Tewari's fraud and fraudulent inducement claim, but denied the motion as to Tewari's other claims. After describing Tewari's trade secrets, the district court

---

[1] Many of MTSR's objections do not make sense in the context of summary judgment. For example, MTSR's objections to Tewari's Exhibit 1 are not evidentiary objections at all, as Exhibit 1 is not "evidence"; rather, it is a summary of undisputed facts and corresponding arguments against MTSR's motion. To the extent MTSR's objections to Dr. Tewari's affidavit (Exhibit 2) were on the basis of relevancy, these objections were unnecessary because the district court is perfectly capable of distinguishing relevant evidence from the clearly irrelevant. As for MTSR's remaining objections to the affidavit, the district court could have properly denied the objections and considered the evidence on summary judgment. That the evidence ultimately may not be admissible at trial after the foundation for Dr. Tewari's testimony is laid—either to testify as an expert witness or to prove-up the facts MTSR objects-to as lacking factual support—is irrelevant for disposition on a Rule 56 motion, where the district court lacks the benefit of the context of trial when making his evidentiary rulings. We decline to speculate as to how MTSR's objections should be resolved at trial.

concluded they were sufficiently specific to constitute trade secrets and that Tewari raised a fact question as to whether its process was unique or merely used techniques and equipment known in the industry. The district court rejected MTSR's argument that Tewari's process was not a trade secret because it was disclosed in a 2004 patent application, on the ground that a patent application does not disclose a trade secret. The district court also held that Tewari raised a question of fact as to whether MTSR used Tewari's system in breach of the NDA and used its trade secrets without authorization. The court overruled MTSR's objections to Dr. Tewari's affidavit as moot, stating that it "reached its conclusions in this order without reliance on the evidence MTSR objects to."

MTSR moved for reconsideration, arguing that the district court made a clear error in law in determining that disclosure in a patent application alone did not destroy a trade secret's secrecy. Relying on *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1051 (Fed. Cir. 2001), the district court agreed and ruled that any information disclosed in Tewari's 2004 patent applications were no longer trade secrets when the NDA was signed in March 2005. Relying heavily on Exhibit BB to MTSR's motion for summary judgment, a MTSR-prepared chart that "quotes the alleged trade secret 'process'" as Dr. Tewari identified it in his interrogatory responses, the district court found that Tewari's trade secret was either disclosed in the 2004 patent application or was already known in the industry. The district court found that the primary difference between what was disclosed by 2004 and what Tewari disclosed to MTSR in 2005 was that the 2005 process was merely a customization based on MTSR's needs using MTSR's equipment. Accordingly, the district court held that Tewari failed to raise a fact issue as to the existence and use of a trade secret.

No. 10-50137

The district court granted MTSR's motion for reconsideration as follows:

> Defendant's motion for reconsideration (docket no. 112) is GRANTED. The sealed order of October 13, 2009 (docket no. 110) is MODIFIED as follows: MTSR's motion for summary judgment (docket no. 71) is GRANTED in full on all claims asserted against it by Tewari De-Ox Systems, Inc., which shall take nothing on its claims. All pending motions are DENIED as moot, and the Clerk is instructed to close this case.

Tewari timely appealed.

## II.  STANDARD OF REVIEW

We review "a grant of summary judgment *de novo* and apply the same legal standard as the district court." *Maverick Recording Co. v. Harper*, 598 F.3d 193, 195 (5th Cir. 2010).  Summary judgment is proper only if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "For the purposes of a summary judgment determination, all fact questions are viewed in the light most favorable to the nonmovant."  *Aucoin v. Haney*, 306 F.3d 268, 271 (5th Cir. 2002).

## III.  ANALYSIS

### A.  Whether the District Court Considered Dr. Tewari's Affidavit on Reconsideration

Tewari first appeals the district court's apparent failure to consider its evidence in opposition to MTSR's motion for summary judgment.  It argues that while it was proper for the district court to reach its conclusions without relying on the evidence it proffered in the original order *denying* summary judgment, it was improper to do so in a motion *granting* summary judgment on reconsideration.  Specifically, in its original order denying summary judgment in part, the district court stated it did not rely on Tewari's proffered evidence to which MTSR objected—most importantly, specific paragraphs from Dr. Tewari's affidavit describing the trade secrets at issue.  On reconsideration, the district court granted summary judgment and modified its previous order, but did not

5

modify it to delete the statement that it did not rely on Tewari's proffered evidence.

The district court could have been more explicit in its order on reconsideration where it modified its order granting summary judgment, and should have made clear that it either did not consider the motion to reconsider to also raise anew the evidentiary objections or was re-denying the objections it previously denied as moot. Tewari has, however, utterly failed to substantiate its argument that the order contains factually erroneous statements that are refuted by Dr. Tewari's affidavit and the district court therefore failed to consider all the evidence. Furthermore, the first order denying MTSR's motion for summary judgment stated that the court "reached its conclusions in *this* order without reliance on the evidence" to which MTSR objected (emphasis added). This language does not imply that the district court also reached its conclusions explained in the *second* order—which indisputably stand alone and are *not* grafted on to the first order—without considering Dr. Tewari's affidavit.

While the order granting reconsideration of the order on MTSR's summary judgment does not specifically discuss the evidence put forward in Dr. Tewari's affidavit, absent any evidence to the contrary we are convinced the district court considered all the evidence when ruling on MTSR's motion to reconsider. In any event, our review is de novo and, looking at all the evidence in the record, we reverse the entry of summary judgment against Tewari. We make no speculation as to which, if any, of the contested summary judgment evidence would be admissible if properly presented during trial.

**B.   MTSR's Motion for Summary Judgment**

As a preliminary matter, we note that Tewari does not appeal the district court's initial grant of summary judgment in MTSR's favor on Tewari's fraud and fraudulent inducement claim. Nor does Tewari, in its briefing to this Court, address the district court's order on reconsideration granting summary judgment

in MTSR's favor on Tewari's breach of contract and Texas Theft Liability Act claims. "An appellant abandons all issues not raised and argued in its *initial* brief on appeal." *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994). A party who inadequately briefs an issue is considered to have abandoned the claim. *Villanueva v. CNA Ins. Cos.*, 868 F.2d 684, 687 n.5 (5th Cir. 1989). Tewari's sole basis of appeal is the entry of summary judgment on its trade secret misappropriation and breach of fiduciary duty claims. Tewari has waived its right to appeal the dismissal of its other claims, and we accordingly examine only those claims properly before us.

On reconsideration, the district court granted summary judgment in MTSR's favor on the misappropriation and breach of fiduciary claims. The court concluded that it had previously committed a clear error of law when it concluded that the publication of a patent application did not disclose and destroy a trade secret. It then concluded that either Tewari's 2004 patent application disclosed every part of Tewari's trade secrets or the elements were known in the industry, and that Tewari therefore did not have any trade secrets which could give rise to claims for misappropriation and breach of fiduciary duty. It also concluded that MTSR did not use any of Tewari's trade secrets because Tewari did not have any trade secrets for MTSR to use. We hold that the district court correctly determined that any information disclosed in the 2004 patent applications were no longer trade secrets, but incorrectly ruled that Tewari's unique combinations of previously disclosed elements could not constitute trade secrets.

### 1.   Applicable Law

The parties agree that Texas law governs this dispute. "Trade secret misappropriation under Texas law is established by showing: (a) a trade secret existed; (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (c) use of the trade secret

without authorization from the plaintiff." *Phillips v. Frey*, 20 F.3d 623, 627 (5th Cir. 1994). To determine whether a trade secret exists, Texas courts weigh six factors set forth in the Restatement of Torts[2] in the context of the surrounding circumstances:

> (1) the extent to which the information is known outside of the business;
> (2) the extent to which it is known by employees and others involved in the business;
> (3) the extent of measures taken to guard the secrecy of the information;
> (4) the value of the information to the business and to its competitors;
> (5) the amount of effort or money expended in developing the information;
> (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*In re Union Pac. R.R. Co.*, 294 S.W.3d 589, 592 (Tex. 2009) (citations omitted). "[T]he party claiming a trade secret should not be required to satisfy all six factors because trade secrets do not fit neatly into each factor every time." *In re Bass*, 113 S.W.3d at 740.

The second element of misappropriation of a trade secret is that the trade secret be acquired improperly, through either a confidential relationship or under an obligation not to disclose it. *See Hyde Corp. v. Huffines*, 314 S.W.2d 763, 769 (Tex. 1958) ("One who discloses or uses another's trade secrets, without a privilege to do so, is liable to the other if (a) he discovers the secret by improper

---

[2] "Texas courts continue to follow the definition of trade secrets, as well as the six factors used to identify a trade secret, set forth in section 757 of the original Restatement of Torts, despite the fact[] that this section was omitted from the Restatement (Second) of Torts, that the Restatement (Third) of Unfair Competition provides a slightly altered definition of trade secrets, and that many states—not including Texas—have adopted the Uniform Trade Secrets Act." *Parker Barber & Beauty Supply, Inc. v. Wella Corp.*, No. 03-04-00623-CV, 2006 Tex. App. LEXIS 8841, at *51 n.19 (Tex. App.—Austin Oct. 11, 2006, no pet.); *see also In re Bass*,113 S.W.3d 735, 739–42 (Tex. 2003) (discussing history and concluding that section 757 remains instructive in Texas).

means, or (b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him.") (citation and internal quotation marks omitted). This element does not appear to be in dispute. If what Tewari disclosed to MTSR was in fact a trade secret, it was disclosed in confidence pursuant to the NDA and MTSR's later use, if any, constitutes a breach of that confidence.

The final requirement to prove misappropriation of a trade secret is its use "without authorization from the plaintiff." *Phillips*, 20 F.3d at 627. The district court originally found that a genuine dispute of material fact existed on this element, but on reconsideration concluded that Tewari failed to raise a fact issue with respect to this element because there was no trade secret for MTSR to have used without Tewari's authorization.

### 2.   Whether Tewari Has Any Trade Secrets

Tewari appeals the district court's conclusion that the 2004 patent application disclosed and destroyed its trade secrets because the patent never issued. It also appeals the district court's interpretation and construction of its asserted trade secrets, specifically arguing that the *combination* of various disclosed elements constitute their own trade secrets and that these combinations gain trade secret protection even if obvious. It also challenges the district court's determination that its customization to MTSR's existing equipment was not itself a trade secret.

### a.   Whether Publication of a Patent Application Destroys a Trade Secret

The district court's order granting reconsideration recognized that it made an error of law in determining that the publication of an issued patent, but not the publication of a patent application, discloses the secret contained therein. Tewari argues that MTSR misled the district court as to the relevant body of law

No. 10-50137

on this point, arguing that Texas focuses on how the trade secret was obtained rather than whether it was published.  This argument is without merit.

"It is self-evident that the subject matter of a trade secret must be secret." *Luccous v. J. C. Kinley Co.*, 376 S.W.2d 336, 338 (Tex. 1964).  "Information that is public knowledge or that is generally known in an industry cannot be a trade secret." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984).  As part of the Intellectual Property and Communications Omnibus Reform Act of 1999, a patent application submitted after November 29, 2000 may be published after eighteen months under 35 U.S.C. § 122(b)(1)(A).  *See also Bondpro Corp. v. Siemens Power Generation, Inc.,* 463 F.3d 702, 707 (7th Cir. 2006) (discussing patent applications and stating "now [under 35 U.S.C. § 122(b)(1)(A)] they have to be published after 18 months . . . the aim of this rule being to disseminate the knowledge revealed in the application to the inventor community so that other inventors can build upon it.").

Although no post-2000 Texas case directly addresses whether a published patent application destroys the secrecy of its contents for trade secret purposes, the weight of authority from other jurisdictions holds that it does.  *See, e.g., Group One*, 254 F.3d at 1051; *OLA, LLC v. Builder Homesite, Inc.,* 661 F. Supp. 2d 668, 673 (E.D. Tex. 2009) ("[T]his information lost its trade secret status on July 25, 2002, when the application that became the '553 patent was published.").  There can be no dispute that a published patent application, like a patent, is readily available—the United States Patent and Trademark Office and Google both allow free online searching of published patent applications.  Under Texas law, information that is generally known or readily available by independent investigation is not secret for purposes of trade secrecy.  *See H. E. Butt Grocery Co. v. Moody's Quality Meats,* 951 S.W.2d 33, 35 (Tex. App.—Corpus Christi 1997, pet. denied); *Gonzales v. Zamora*, 791 S.W.2d 258, 264 (Tex. App.—Corpus Christi 1990, no writ) ("The word *secret* implies that the

10

information is not generally known or readily available."); *Allan J. Richardson & Assocs., Inc. v. Andrews*, 718 S.W.2d 833, 837 (Tex. App.—Houston [14th Dist.] 1986, no writ) ("Even in the vernacular the word secret implies that the information is not generally known or readily available.").

Tewari argues that Texas law looks to how the alleged trade secret was obtained rather than whether the information is in fact secret. *See Luccous*, 376 S.W.2d at 340*; K. & G. Oil Tool & Serv. Co. v. G. & G. Fishing Tool Serv.*, 314 S.W.2d 782 (Tex. 1958). These cases are inapposite. *K&G* involved *unpatented* technology that was misappropriated *before* the trade secrets at issue were disclosed by a subsequent patent. The *Luccous* Court explained that *K&G* "held that plaintiff was not deprived of his cause of action for defendant's breach of confidence simply because some of plaintiff's secrets were *later disclosed* by the issuance of a patent." 376 S.W.2d at 339 (emphasis added). In *Luccous*, the plaintiff was denied relief because the alleged misappropriation occurred *after* a patent on the technology at issue had expired. *Id.* The *Luccous* Court explained the decision to seek a patent is an either/or choice: either "secure the material rewards for his invention for a limited time" on condition "that he make full disclosure for the benefit of the public of the manner of making and using the invention" or "make no public disclosure of his invention and thereby protect his trade secret." *Id.* at 340 (citations omitted). We have characterized *Luccous* as concluding that a "design of a device could not be a trade secret because it had been patented—and thus revealed to all the world—before any dealing between the parties." *Metallurgical Indus., Inc. v. Fourtek, Inc.*, 790 F.2d 1195, 1200 (5th Cir. 1986).

This is not a case where MTSR argues it gained knowledge of Tewari's processes while they were still trade secrets and those processes subsequently lost trade secret protection due to publication. Rather, MTSR argues that Tewari's alleged trade secrets are not protectable because they were disclosed

in patent applications before MTSR signed the NDA. The two patent applications at issue were published on January 15, 2004 and April 15, 2004. Although the district court did not discuss Texas law in doing so, it correctly concluded that any processes disclosed in these applications were not trade secrets in 2005 when Tewari and MTSR executed the NDA.

### b.   Tewari's Trade Secrets

Tewari defines its trade secrets in Dr. Tewari's deposition testimony and in paragraphs 17–18 of Dr. Tewari's affidavit, identifying five trade secrets that arguably were not disclosed in the 2004 patent applications. Simplifying matters for purposes of this opinion, Dr. Tewari defined the trade secrets as: (1) a tri-gas mixture *in combination with* the Tewari zero-oxygen process published in 2004; (2) an oxygen scavenger disclosed in a 2006 patent application with the ability to quickly operate in certain environmental conditions; (3) the combination of trade secrets 1 and 2; (4) the knowledge of how to adopt the previously disclosed Tewari process to an open-nozzle system, including knowledge of ideal initial-oxygen levels (and how to achieve them) and best practices for monitoring oxygen levels; and (5) knowledge of the importance of the foam tray on which the meat is placed in retail packaging for oxygen levels. The district court concluded that "[a]s MTSR's exhibit BB describes in detail . . . every specific of Tewari's claimed trade secret was *either* disclosed in the 2004 patent applications *or* already disclosed and known in the industry. . . ." (emphasis added). As we explain below, the conclusion that Tewari did not have any trade secrets because each of their elements was disclosed was in error.

A trade secret "is one of the most elusive and difficult concepts in the law to define." *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 288 (5th Cir. 1978). In many cases, the question of whether certain information constitutes a trade secret ordinarily is best "resolved by a fact finder after full presentation of evidence from each side." *Id.* at 289. Regardless, we have specifically rejected

the contention that a combination of disclosed technologies cannot itself constitute a trade secret. *Metallurgical Indus.*, 790 F.2d at 1202 (citing *Ventura Mfg. Co. v. Locke*, 454 S.W.2d 431 (Tex. Civ. App. 1970, no writ); *Sikes v. McGraw-Edison Co.*, 665 F.2d 731, 736 (5th Cir. 1982)). The district court's reliance on *H. E. Butt Grocery* was misplaced because in that case the trade secret—a process for making pre-marinated beef fajitas—was disclosed in full by another company. 951 S.W.2d at 39. Here, Tewari argues its trade secrets constitute unique *combinations* of disclosed technologies or processes, a distinction that was not at issue in *H.E. Butt*.

Even more relevant to the case at hand, the *Ventura Manufacturing* case specifically granted trade secret protection to a "trial and error" process of cleaning small yet valuable titanium scraps lost during the manufacturing of airplanes. 454 S.W.2d at 434. The Texas court explained that the details of the procedure such as "as the types and amounts of chemicals to be used and the times and temperatures for cleaning the fasteners" were protectable trade secrets even if the general procedure was public knowledge. *Id.* In this case, the district court erroneously discounted Tewari's potential trade secrets as mere "customization" and a "trial-and-error" process to adjust MTSR's existing machines.

Likewise, in *Sikes* (a case involving a weed whacker), we referenced and quoted heavily from *Water Services, Inc. v. Tesco Chemicals*, 410 F.2d 163, 173 (5th Cir. 1969), in which the trade secret—a water purification system—"was the application of known techniques and the assembly of available components to create the first successful system in the industry." 665 F.2d at 736. We further explained that "a trade secret can exist in a combination of characteristics and components each of which, by itself, is in the public domain, but the unified process, design and operation of which in unique combination, affords a competitive advantage and is a protectible secret." *Id.* (quoting *Imperial Chem.*,

*Ltd. v. Nat'l Distillers & Chem. Corp.*, 342 F.2d 737, 742 (2d Cir. 1965)). While MTSR is correct to argue that *Sikes* stands for the proposition that a "simple and obvious change in an existing device or process is not a trade secret," that question in *Sykes* was one of fact for the jury to decide. 665 F.2d at 733.

As *Sikes, Metallurgical Indus., Ventura Mfg.,* and *Water Services*, *supra*, all demonstrate, it is of no moment that Tewari's alleged trade secrets are combinations of disclosed processes and technologies with other elements—namely scavengers and gas mixtures—also known in the industry. Tewari has raised a genuine dispute of material fact as to whether it has trade secrets that it disclosed to MTSR, and the district court's holding to the contrary is in error.

### 3.   Whether MTSR Used Tewari's Trade Secrets

The district court originally decided Tewari raised a fact issue on this element, but in its order on reconsideration granting MTSR summary judgment decided there was no fact issue because Tewari did not have any trade secrets for MTSR to use without Tewari's consent. Because we conclude a genuine dispute of material fact exists as to whether Tewari has any trade secrets, we also determine that a fact issue exists as to whether MTSR used Tewari's alleged trade secrets, and reverse the district court's entry of judgment on this ground.

### C.   Tewari's Motion for Partial Summary Judgment

Tewari appeals the district court's apparent failure to rule on an element of its breach of fiduciary duty claim on its motion for partial summary judgment on the existence and breach of fiduciary duty. Specifically, Tewari argues it is entitled to an explicit ruling on whether MTSR owed it a fiduciary duty. The district court spilled considerable ink explaining the applicable legal framework for evaluating whether a fiduciary relationship exists, evaluating and distinguishing MTSR's proffered cases in opposition to finding a duty exists, and explaining the factual circumstances in this case. The district court explained

that while a *trade secret owner* cannot unilaterally create a confidential relationship, "the NDA gave MTSR notice that Tewari considered the information it was disclosing to be a trade secret and that the disclosure was made in confidence." It also explained that "the question raised is whether the recipient of the information knew or should have known that the information was a *trade secret* and the disclosure was made in confidence." (emphasis added.) The district court then evaluated the second element on which Tewari sought partial summary judgment—that MTSR breached its duty—and determined that there was a dispute of material fact here because MTSR argued that Tewari did not show it any trade secrets. The district court concluded that partial summary judgment was inappropriate because "a fact issue exists whether MTSR has breached the fiduciary duty *it owed to* Tewari." (emphasis added).

While the district court's order could be seen as being subject to two interpretations, the differences are mere semantics. The district court either decided that (1) no fiduciary duty exists absent Tewari having disclosed actual trade secrets, or (2) there was a fiduciary duty but MTSR did not breach it if Tewari did not disclose any actual trade secrets. Under (2), the only fiduciary duty MTSR could have owed Tewari according to the district court's logic was to keep Tewari's *trade secrets* secret—the same duty as in (1). Under either interpretation, Tewari's claim—and MTSR's alleged fiduciary duty—depends on Tewari having actual trade secrets that it disclosed to MTSR. The district court's order therefore sufficiently addressed Tewari's motion for partial summary judgment on this issue and Tewari is not entitled to a more explicit ruling.

**D.   Whether the District Court Erred by Not Sua Sponte Granting Summary Judgment in Tewari's Favor**

Tewari argues that the district court should have *sua sponte* granted summary judgment in its favor on the disclosure of at least one trade secret

because "there is not a scintilla of evidence produced by MTSR showing that the Tewari process, composed of other trade secrets identified and taught by Tewari, is used or known by anyone else in the industry." As discussed above, genuine disputes of material fact exist as to whether any trade secrets in fact exist. Summary judgment on this issue is therefore not appropriate.

## IV. CONCLUSION

While the district court could have made its order clearer, it appears to have properly considered Tewari's objected-to evidence when ruling on its motion for reconsideration. It erred by entering judgment in favor of MTSR when it incorrectly defined Tewari's trade secrets and failed to consider that a unique combination of elements already publicly disclosed or generally known are protectable as trade secrets under Texas law. It correctly denied Tewari's partial summary judgment claim on the existence of a fiduciary duty and did not err when it failed to sua sponte enter judgment in Tewari's favor.

AFFIRMED in part, REVERSED in part and REMANDED.