# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 8, 2011

No. 10-30894

Lyle W. Cayce
Clerk

ARTHUR E. STALLWORTH,

Plaintiff–Appellant

v.

RALPH SLAUGHTER, President, Southern University & Agricultural &
Mechanical University; JOHNNY G. ANDERSON, Chairman of the Board of
Supervisors of Southern University; RICHARD J. CARLTON, JR.; WARREN
A. FORSTALL; DALE N. ATKINS; LEA D. MONTGOMERY; HERMAN LEE
HARTMAN, SR.; LOUIS MILLER; MURPHY NASH, JR.; E. JEAN WARE;
ACHILLES WILLIAMS; MYRON K. LAWSON; TONY M. CLAYTON;
REVEREND SAMUEL C. TOLBERT, JR.; MARY RIDEAU DOUCET;
REVEREND JESSE B. BILBERRY; AFI C. PATTERSON; FRED PITCHER,
Chancellor, Southern University Law Center; BOARD OF SUPERVISORS
OF SOUTHERN UNIVERSITY AND AGRICULTURAL AND MECHANICAL
COLLEGE,

Defendants–Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 3:07-CV-886

Before HIGGINBOTHAM, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 10-30894

Arthur E. Stallworth, a tenured professor and former Vice Chancellor at Southern University Law Center ("SULC"), brought this § 1983 action against the Board of Supervisors (the "Board") of Southern University ("SU"); the members of the Board; Ralph Slaughter, the President of SU; and Freddie Pitcher, the Chancellor of SULC; for violating his substantive and procedural due-process rights. In his complaint, Stallworth alleges that the defendants (1) wrongfully deprived him of a salary increase that Pitcher had promised to him, and (2) improperly reduced his salary after he left the post of Vice Chancellor to return to a full-time teaching position. He asserts that both deprivations were arbitrary and that he did not receive adequate notice or a hearing before his salary was reduced. His complaint also contains several related claims under Louisiana state law.

The district court awarded summary judgment to the defendants. With one modification, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Stallworth joined the SULC faculty in 1991 as a nontenured Associate Professor with a nine-month appointment. In 1993, he was promoted to Full Professor, awarded tenure, and appointed to the administrative post of Vice Chancellor of SULC. Stallworth's new joint position was a twelve-month appointment with a starting salary of $88,007 per year. It is undisputed that teaching positions are nine-month appointments and administrative positions are twelve-month appointments at SULC.

In January 2005, Stallworth advised Chancellor Pitcher that he was considering leaving the post of Vice Chancellor and returning to a full-time teaching position. In May 2005, however, Pitcher asked Stallworth to serve as

No. 10-30894

Vice Chancellor for at least one more year. Several weeks later, in June 2005, Stallworth notified Pitcher that he would be willing to stay on as Vice Chancellor, but only if he were to received a salary increase from $130,725 per year (which was his base salary at the time) to over $159,000 per year. Later that month, Pitcher informed Stallworth that President Slaughter "would not approve" the requested salary, and Pitcher offered a 10% raise instead. After some haggling over the exact amount, Stallworth and Pitcher agreed on a salary of $143,797 per year in exchange for Stallworth continuing to serve as Vice Chancellor for one more year.[1]

Before Pitcher could submit the salary increase to Slaughter and the Board for approval, Hurricane Katrina struck Louisiana, and the Governor of Louisiana issued an executive order imposing a hiring and spending freeze on all executive agencies, including SU and SULC. When the freeze was lifted in spring 2006, Pitcher did not submit the salary increase for approval. Stallworth never received the promised salary increase.

Stallworth served as Vice Chancellor until the end of June 2006, when he voluntarily resigned and moved to a full-time teaching position. Around this time, Pitcher informed Stallworth that his total salary would be reduced by 20% in accordance with an SU policy of reducing the salaries of administrators who move from twelve-month administrative appointments to nine-month teaching appointments. Stallworth protested, arguing to Pitcher that he had not been told of such a policy when he had been appointed Vice Chancellor. In response,

---

[1] In their brief on appeal, the defendants dispute that Pitcher ever agreed to increase Stallworth's salary. But, at summary judgment, "all fact questions are viewed in the light most favorable to the nonmovant"—in this case, Stallworth. *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 609 (5th Cir. 2011).

No. 10-30894

Pitcher decided to reduce Stallworth's salary by only 10%, telling Stallworth that it was "the best that he could do." In August 2006, Pitcher formally recommended to the Board that Stallworth's salary be decreased from $130,725 per year (on a twelve-month basis) to $128,535 per year (on a nine-month basis).[2] The Board approved the recommendation at its November 2006 meeting. Stallworth alleges that he was not given adequate notice of this meeting.

In December 2006, Stallworth availed himself of SU's grievance procedures. His grievance was denied by Pitcher and Slaughter. In January 2008, Stallworth appealed to the Board, which scheduled the grievance for hearing at its February 29 meeting. On February 8, Stallworth's attorney sent a letter to the Board reiterating Stallworth's complaints, requesting a hearing, and stating that he and Stallworth would be unable to attend the February 29 meeting. At the meeting, which neither Stallworth nor his attorney attended, the Board's Executive Committee recommended that Stallworth's request for a hearing be denied, and the Board approved that recommendation.

In November 2008, Stallworth brought this lawsuit against Pitcher, Slaughter, the Board, and the individual members of the Board. According to the complaint, the defendants are named "in their official capacities" only. Stallworth seeks "recovery of all lost salary and benefits" and "reinstate[ment]," i.e., the unwinding of the salary reduction and the approval of the promised salary increase going forward. His complaint contains three sets of claims:

---

[2] Stallworth's post-reduction salary of $128,535 was calculated by deceasing his pre-reduction salary of $130,725 by 10% (to $117,653) and then by adding a 5% across-the-board increase approved by the Louisiana legislature (to $123,535) and a $5,000 merit increase approved by the Board (to $128,535). Because Stallworth was eligible for those two increases irrespective of his change in position, the amount of the reduction was about $13,700.

4

No. 10-30894

(1) § 1983 claims seeking declaratory and prospective injunctive relief for violations of substantive and procedural due process under the Fourteenth Amendment; (2) state-law claims seeking declaratory and prospective injunctive relief for breach of contract and violations of due process under the Louisiana Constitution; and (3) state-law claims seeking money damages for breach of contract and the "improper reduction of the Plaintiff's salary."[3]  His theories of liability on his due-process claims are that the defendants failed to give him adequate notice of the November 2006 Board meeting at which the salary reduction was approved, and that both the salary reduction and the denial of the promised salary increase were arbitrary and not reasonably related to a legitimate governmental interest.

The defendants moved for summary judgment, arguing that Stallworth's claims were precluded by the Eleventh Amendment and qualified immunity. The district court agreed with this argument, granted summary judgment in favor of the defendants, and dismissed Stallworth's case with prejudice. Stallworth now appeals.

## II.  STANDARD OF REVIEW

"We review a grant of summary judgment *de novo* and apply the same legal standard as the district court." *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 609 (5th Cir. 2011) (citation omitted). Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  We may affirm a grant of summary

---

[3] The Board (as an institution) is only a defendant with respect to Stallworth's state-law claims.

No. 10-30894

judgment "on any basis supported by the record." *TIG Specialty Ins. Co. v. Pinkmonkey.com Inc.,* 375 F.3d 365, 369 (5th Cir. 2004) (citation omitted).

### III.  ANALYSIS

**A.    Section 1983 Claims**

The district court dismissed Stallworth's § 1983 claims on the basis of qualified immunity.  Stallworth argues on appeal that the district court erred in dismissing the claims on this basis because qualified immunity it not available to defendants who have been sued in their official—rather than their personal—capacities.

Stallworth is correct that under Supreme Court case law, the personal defense of qualified immunity does not apply to official-capacity claims.  *See Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) (citing *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985), and *Hafer v. Melo*, 502 U.S. 21, 25 (1991), as holding that qualified immunity is "inapplicable in § 1983 suits against government officials in their 'official capacity'").  Stallworth's complaint expressly names the defendants "in their official capacities" only.  Further, the relief he seeks involves compensation decisions that fall squarely within the official decision-making authority of the Board members, President Slaughter, and Chancellor Pitcher.  Therefore, Stallworth's § 1983 claims are official-capacity claims that may not be dismissed on the basis of qualified immunity.

Nonetheless, we may affirm the judgment of the district court on any ground supported by the record. *TIG Specialty*, 375 F.3d at 368.  We do so today on the ground that Stallworth has failed to create a genuine dispute of material

6

fact as to whether he had a constitutionally protected "property interest" in either the promised salary increase or the part of his salary that was cut.

To prevail on his § 1983 claims for the denial of procedural or substantive due process, Stallworth must show that he has been denied a constitutionally protected property interest. *See Lollar v. Baker*, 196 F.3d 603, 607 (5th Cir. 1999) ("To show a due process violation in the public employment context, the plaintiff must first show that [he] had a legally recognized property interest at stake."). To enjoy a property interest in employment, an employee must have "a legitimate claim of entitlement," created and defined by "existing rules or understandings that stem from an independent source such as state law." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "An expectation of employment carries with it some protected expectations as to a salary." *Williams v. Tex. Tech Univ. Health Scis. Ctr.*, 6 F.3d 290, 293 (5th Cir. 1993). "But the more detailed and conditional the understanding becomes between employer and employee, the weaker the linkage becomes between those understandings and the Due Process Clause." *Id.* at 293 (citing *Mangaroo v. Nelson*, 864 F.2d 1202, 1206–08 (5th Cir. 1989)).

Regarding his claim for the denial of the promised salary increase, Stallworth asserts a property interest based on the handshake deal he made with Pitcher in June 2005. We disagree that this informal and incomplete agreement created a legitimate claim of entitlement in the promised salary increase. Stallworth's salary increase was never approved by the SU Board, and such approval is expressly mandated by several "independent sources" of law. For example, § 17:3305(A) of the Louisiana Revised Statutes states:

> The head of each college and university shall appoint and fix the salaries and the duties of the members of the faculty and

No. 10-30894

administrative and professional staff for the college or university he heads, *subject to* the recommendation of the president or chief administrative officer of the system and *approval of the appropriate management board.*

LA. REV. STAT. ANN. § 17:3305(A) (emphasis added). Likewise, the Board's bylaws and SULC's 2005–2006 Faculty Guide both provide that the SULC Chancellor has the duty to "fix the salaries and duties" of SULC faculty and administrators, but that such responsibility is "subject to the recommendation of the President and the approval of the Board." In his deposition, Stallworth admitted that he knew that the establishment of a particular salary for the position of Vice Chancellor had to be submitted to the Board for individual approval. He also testified that he understood that his salary increase would not be complete until the Board approved it.

In other words, both Louisiana state law and SU's own regulations imposed an explicit condition—Board approval—on the salary increase. This condition was known to Stallworth, and, for whatever reason, it did not occur. We thus find that Stallworth did not have a legitimate claim of entitlement in the promised salary increase because it had not been approved by the Board. *See Hoffmans v. Univ. of Tex. at El Paso*, 22 F.3d 1093, 1994 WL 198869, \*2 (5th Cir. 1994) (per curiam) (unpublished) (holding that a university professor did not have a cognizable property interest in an expected pay raise because her expectations were conditioned by the fact that her appointment had to approved every year by the Board of Regents).

As for the salary reduction, Stallworth contends that because he has tenure as an SULC faculty member, he has a heightened expectation—and thus a protected property interest—in the whole of his salary. Putting aside the

No. 10-30894

question of whether the fact of tenure alone creates a property interest in the whole of one's salary, we find that Stallworth has failed to present sufficient evidence showing that he had tenure in his continued employment as *Vice Chancellor*. Other than his own unsubstantiated, conclusory assertion to the contrary, the record does not contain any evidence showing that Stallworth had tenure in his administrative post. Indeed, the only relevant evidence in the record—the Personnel Action Form from 1993 that memorializes Stallworth's promotion to Full Professor, receipt of tenure, and appointment as Vice Chancellor—indicates that Stallworth did not have tenure in his administrative post: the notation of the award of tenure directly follows the notation of the status change to Full Professor. By contrast, the notation of his appointment to the Vice Chancellor position is on a different line and is not linked to any reference to tenure.

Nor is there any other record evidence that suggests that Stallworth had a heightened expectation in his employment as Vice Chancellor (and therefore in the portion of his salary that was attributable to his employment as Vice Chancellor). Rather, common sense dictates that Stallworth should have expected that SU would likely reduce the salary of an administrator who relinquishes his administrative duties and, in doing so, exchanges a twelve-month appointment for a nine-month appointment. While in this case it is difficult to isolate the portion of Stallworth's salary that is attributable to his work as Vice Chancellor (because he was paid in one lump sum), we have no difficulty finding on the basis of the record before us that the 10% decrease that Stallworth suffered as a result of his voluntarily relinquishing the Vice

No. 10-30894

Chancellor position did not impinge on any constitutionally protected property interest in his salary as a tenured professor.[4]

## B.    State-Law Claims

The district court dismissed Stallworth's state-law claims for money damages on the basis of Eleventh Amendment immunity, and it declined to exercise supplemental jurisdiction over his remaining state-law claims for declaratory and injunctive relief. Stallworth abandoned his challenge to the first ruling at oral argument, and he has not appealed the second. Thus, the only issue that remains alive on appeal is whether the district court erred in dismissing the state-law claims *with* prejudice rather than *without* prejudice.

We agree with Stallworth that the district court erred in doing so. For both grounds on which the district court relied, our precedent is clear that a dismissal must be without prejudice. *See Bass v. Parkland Hosp.*, 180 F.3d 234, 146 (5th Cir. 1999) ("[T]he dismissal of . . . pendent claims [under 28 U.S.C. § 1367(c)] should be *without* prejudice so that the plaintiff may refile his claims in the appropriate state court."); *Warnock v. Pecos Cnty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996) ("Because [Eleventh Amendment] sovereign immunity deprives a court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1) and *not with prejudice*." (emphasis added)).

## IV.  CONCLUSION

Accordingly, we modify the judgment to be without prejudice as to the state-law claims, and we affirm the judgment as modified.

AFFIRMED AS MODIFIED.

---

[4] Because we find that Stallworth did not have a protected property interest, we need not decide whether the defendants' actions were violative of due process.