# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 31, 2011

No. 11-10397
Summary Calendar

Lyle W. Cayce
Clerk

EL-RAY KING,

Plaintiff-Appellant

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA,

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas
No. 2:10-CV-00273-J

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

El-Ray King filed a *pro se* complaint seeking long-term disability benefits that were allegedly improperly withheld by Unum Life Insurance Company of America. King appeals the district court's grant of summary judgment in Unum's favor. Because King's claims are untimely, we affirm the district court's judgment.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-10397

## I.

## A.

In connection with his employment at Weyerhaeuser Company, King was entitled to disability insurance coverage under a Unum group disability insurance policy (the "Policy"). The Policy provides the following relevant definitions:

> "Disability" and "disabled" mean that because of injury or sickness:
> 1. the insured cannot perform each of the material duties of his occupation; and
> 2. after benefits have been paid for 24 months, the insured cannot perform each of the material duties of any gainful occupation for which he is reasonably fitted by training, education or experience.

On January 25, 1999, Unum received a claim for benefits from King. According to the claim forms, King worked as a Feeder Operator at Weyerhaeuser. In a statement in support of King's claim for disability benefits, Dr. Neil Veggeberg indicated that King's primary diagnosis was spondylolisthesis,[1] and stated that King should not engage in any "heavy lifting." Dr. Veggeberg also stated that King's prognosis for recovery was "fair" and that he expected "fundamental changes in [King's] medical condition" in three to four months.

In a letter dated January 27, 1999, Unum acknowledged its receipt of King's claim for disability benefits. This letter also stated that Unum was reviewing King's claim and would contact him if they needed additional information to determine his eligibility for benefits. On February 8, 1999, Unum

---

[1] Spondylolisthesis is the "forward displacement of a lumbar vertebra on the one below it and especially of the fifth lumbar vertebra on the sacrum producing pain by compression of nerve roots." Merriam-Webster Dictionary Online, http://www.merriam-webster.com/medical/spondylolisthesis (last visited Oct. 14, 2011).

received additional medical records from Dr. Howard Berg, an orthopedist who had treated King.

The following day, Dr. Reynold T. Schmidt reviewed Dr. Berg's records and completed a medical file review of King's claim. Dr. Schmidt concurred with Dr. Veggeberg's recommendation that King engage in no heavy lifting. Dr. Schmidt also agreed with Dr. Berg's opinion that King could only perform "light duty work."

On March 12, 1999, Steve Jacobs, a Rehabilitation Coordinator for Unum, completed a vocational review for King's claim. After performing his review, Jacobs concluded that the Dictionary of Occupation Titles ("DOT") generally rated King's occupation as "heavy," but the specific job that King performed at Weyerhaeuser appeared to have been "light," particularly since the maximum lifting and carrying requirement was, at least as described by a Weyerhaeuser representative, only 45 pounds.

In a letter dated March 18, 1999, Unum informed King that his request for disability benefits had been approved. Later that year, Unum received supplemental claim forms from King. In these forms, King included an update from Dr. Berg, who advised Unum that King had undergone lumbar fusion surgery on June 30, 1999. Dr. Berg noted that King's prognosis for recovery was good and that he expected "fundamental changes in [King's] medical condition" in three to four months. In addition, Dr. Berg observed that in an eight hour workday King could perform "light activity," which could involve "20 lbs. maximum lifting, carrying 10 lbs. articles frequently[.]" In concluding, Dr. Berg also stated that he expected King to be able to perform "medium activity" by December 1, 1999.

On March 1, 2000, Unum sent King a letter requesting an updated certification of his continued disability. That same day, Unum sent Dr. Berg a letter requesting updated information regarding King's medical restrictions and

No. 11-10397

limitations. In response to this request, Dr. Berg sent the observations he made after he examined King on January 11, 2000. According to these notes, Dr. Berg stated that King could return to modified work on January 17, 2000. He did, however, recommend a lifting limit of 50 pounds, along with limited bending and twisting.

On March 20, 2000, King sent Unum the requested updated information regarding his disability. In his submission, King included an Estimated Functional Abilities Form completed by Dr. Berg which indicated an improved functional ability. While in a prior report Dr. Berg stated that King was only capable of "light duty work," in this updated form he opined that King was capable of performing "medium activity," which is defined as "50 lbs. maximum lifting with frequent lifting/carrying of up to 25 lbs."

Six days later, Unum revisited the conclusions drawn by the March 12, 1999 vocational review by referring King's case to a vocational consultant. In light of new information Unum received, the vocational consultant indicated that King's position at Weyerhaeuser was best represented by the DOT Title "Box Printer," which was classified as requiring only light physical capacity.

This updated classification of King's position, combined with Dr. Berg's opinion that King was capable of "medium activity," led Unum to conclude that King was no longer eligible for disability benefits. In a letter sent in April 2000, Unum informed King that he would not receive benefits past April 27, 2000. This letter also informed King that he had the right to appeal Unum's denial of benefits decision within 90 days of receiving this letter.

After Unum's decision, a dispute arose as to whether Unum received a timely request for administrative review. On September 19, 2000, Unum received a fax from West Texas Legal Services that included a letter dated July 24, 2000. In this letter, King requested that his claim for disability benefits be reviewed. By letter dated December 20, 2000, Unum advised King that because

No. 11-10397

it received the notice of appeal over 90 days after the decision to deny benefits was made, it considered his appeal untimely. Although the letter that was faxed on September 19, 2000 was dated July 24, 2000, Unum stated that it had no record of King's request for an appeal before September 19. Accordingly, Unum refused to review its initial decision denying King further disability benefits.

In April 2001, Ronald T. Spriggs, an attorney for King, sent Unum a letter threatening it with litigation if it did not provide King with restitution. The following month, on May 15, 2001, Unum sent Spriggs a letter denying King's request for relief. Several years passed before any further activity regarding King's claim occurred.

**B.**

On November 18, 2004, Unum, the Department of Labor, and various state insurance departments entered into a Regulatory Settlement Agreement (the "Agreement"). As part of the Agreement, Unum consented to establishing a Claim Reassessment Process which would provide certain individuals another opportunity to challenge Unum's decision to deny benefits. On March 11, 2005, King asked to participate in the Claim Reassessment Process.

In January 2006, King submitted a Reassessment Information Form which provided Unum with information regarding his employment. Along with various other pieces of information, King stated that he had been employed by Steamatic of Amarillo since February 2001 and had received unemployment benefits of $7,512.00 in 2000. In choosing to participate in the Claim Reassessment Process, King signed a Conditional Waiver and Release which, in pertinent part, states:

> To the extent that following the reassessment there remains a complete or partial denial of benefits, my right to initiate or continue litigation regarding that portion of the prior denial that has not been reversed or changed is not waived. In addition, any applicable statute of limitations is tolled during the pendency of the

reassessment of my claim; however, I understand that my participation in the Claim Reassessment Process will not revive or reinitiate the statute of limitations with respect to the previous claim decision.

On April 13, 2006, James Ludlow, a Claim Reassessment Consultant for Unum, requested that King complete an Education and Employment History form (the "Employment Form"). King completed and returned the Employment Form, which confirmed his employment at Steamatic since February 2001, and provided his job requirements at Steamatic.

Upon receiving this information, Ludlow requested an opinion regarding the proper classification for King's position while at Weyerhaeuser. On July 31, 2006, Dorothy Edwards completed a vocational review and concluded that King's position at Weyerhaeuser required exertion at a medium demand level. Notably, this opinion differed from the "light physical capacity" assessment which led to the termination of King's benefits. In her review, Edwards stated that King's position at Steamatic also required exertion at a medium demand level.

After receiving the vocational information from Edwards, Ludlow requested a medical file review. Dr. Charles Sternbergh subsequently completed this review and concluded that twelve months after King's June 1999 lumbar surgery, King "would be supported to sustain medium work, with accommodation to prevent repetitive bending, lifting, or twisting. Lifting limitation would be 35 pounds occasionally and 50 pounds rarely."

Upon receiving Dr. Sternbergh's opinion, Ludlow referred the matter back to Edwards for further comment on King's occupational ability. In this subsequent review, Edwards opined that King would have been unable to perform his duties at Weyerhaeuser, which required exertion at a medium demand level. Because Dr. Sternbergh "essentially described the light exertional

demand level," Edwards stated that King would have been precluded from satisfying the work requirements of his position at Weyerhaeuser.

Ludlow then used this information in filling out a Director Referral in which he advised that King's claim should not have been closed as of April 27, 2000. In his referral, Ludlow stated that while King should receive additional benefits, those benefits should be limited because: (1) King was able to return to work that required exertion at a "medium demand level" at Steamatic, and was thus able to perform the demands of his pre-disability position at Weyerhaeuser by February 1, 2001; and (2) King's earnings at Steamatic were in excess of 80% of his indexed pre-disability earnings. Given these considerations, Ludlow recommended that King's claim be reopened and benefits be paid from April 27, 2000 (the date at which his disability benefits were previously terminated) until February 1, 2001 (the beginning of his employment at Steamatic). Ludlow also noted that King's unemployment benefits, which were related to his inability to work due to his medical condition, were "offsettable" from his disability benefits. Ludlow's recommendation was approved on September 29, 2006.

Approximately one month later, Ludlow informed King of the reassessment decision and communicated the basis for the decision. In a letter dated October 25, 2006, Ludlow told King that he would receive $5,425.29 for past due disability benefits, which was offset by the unemployment benefits he received in 2000. Ludlow also told King that he was going to receive $2,281.04 in interest. King subsequently accepted the additional disability benefits from Unum.

Over three years after he received notice of the reassessment decision, King wrote to Ludlow and requested a copy of his claim file. On January 7, 2010, Unum sent King a response to his request and provided a copy of his claim file and the Policy.

No. 11-10397

In a letter dated March 3, 2010, King complained about Unum's reassessment decision and requested an administrative review of that decision. Specifically, he disagreed with the grounds used to limit the disability payment received through the Claim Reassessment Process, along with the decision to offset the unemployment benefits he had received from this payment. In a letter dated March 16, 2010, Unum provided the following response:

> We regret we are not able to comply with your request for an additional administrative review. Your claim has already received an additional administrative review in accordance with the terms of the Regulatory Settlement Agreement ("RSA"). The RSA established specific procedures for both the reassessment of eligible claims and the monitoring of the reassessment decision-making process. The decision made on your claim was subject to the monitoring process. This monitoring was conducted at the direction of the Company's Regulatory Compliance Unit and also by the Lead Regulators under the RSA. Furthermore . . . the claim reassessment process ended approximately two years ago.

On October 25, 2010, King filed a lawsuit in state court which was subsequently removed to federal court. In his complaint, King presented a claim for benefits under the Employee Retirement Security Act ("ERISA") in which he alleged that he was improperly denied disability benefits. Additionally, he brought a second claim under ERISA in which he averred that Unum not only failed to provide statutorily required information to him, but also "failed to provide [him] with the opportunity for a full and fair review of his claim." On March 18, 2011, the district court granted summary judgment in Unum's favor. Notably, the district court held that King's claim for benefits was time barred, and that his second claim failed as a matter of law. This appeal followed.

## II.

### A.

"We review a district court's grant of summary judgment in ERISA cases de novo, applying the same standard as the district court." *Lafleur v. La. Health*

No. 11-10397

*Serv. and Indem. Co.*, 563 F.3d 148, 153 (5th Cir. 2007).  A grant of summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In evaluating the existence of a genuine issue of material fact, we review the evidence and inferences drawn from that evidence in the light most favorable to the non-moving party.  *Baker v. Metro. Life. Ins. Co.*, 364 F.3d 624, 627-28 (5th Cir. 2004).

**B.**

**i.**

Under ERISA, a cause of action accrues after a claim for benefits has been made and formally denied.  *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 230 (5th Cir. 1997).  Since ERISA does not contain a statute of limitations for benefit claims, we apply the state statute of limitations most analogous to the cause of action raised by a plaintiff.  *Hogan v. Kraft Foods*, 969 F.2d 142, 145 (5th Cir. 1992).  Because King's claim for benefits, which is brought pursuant to 29 U.S.C. § 1132(a)(1)(B), seeks to enforce his rights under the Policy, it is analogous to a state breach of contract claim.  *Id.*  As such, we will apply the Texas four year limitations statute governing breach of contract claims.  *Id.; Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) ("A party asserting a breach of contract claim must sue no later than four years after the day the claim accrues.") (citing Tex. Civ. Prac. & Rem. Code § 16.051).

On appeal, King argues that the district court erred in determining that his claim for benefits was time barred.  We disagree.  Although an argument can be made that the statute of limitations actually began running in April 2000, we will base our analysis on an accrual date of May 15, 2001–the date Unum sent Spriggs a letter denying King's request for relief.  For purposes of this analysis, we will also assume that King's March 11, 2005 request to participate in the Claim Reassessment Process made his claim "penden[t]," and thus tolled the

9

No. 11-10397

statute of limitations pursuant to the Conditional Waiver and Release.  On this date, King had approximately two months remaining on the four year statute of limitations.

When Unum communicated its reassessment decision to King in October 2006, the statute of limitations clock started running again.  Given the two months that were remaining in the statute of limitations period, King had until December 2006 to bring his claim for benefits.  Because King did not file his lawsuit until October 25, 2010, this claim is clearly time barred.  The district court therefore did not err in so holding.

In an attempt to salvage his claim, King argues that the decision he is appealing is not the initial denial of benefits, but rather the decision made at the conclusion of the Claim Reassessment Process.  This contention, we conclude, does not further King's cause.  Contrary to what King suggests, the reassessment decision which granted him additional disability benefits was not a separate and independent decision, but rather was, as the name suggests, a reassessment of a previous decision.   In signing the Conditional Waiver and Release, King acknowledged that his "participation in the Claim Reassessment Process w[ould] not revive or reinitiate the statute of limitations with respect to the previous claim decision."  His efforts to characterize the reassessment decision as a separate and independent denial of benefits is a legally unsupported attempt to do precisely what the plain terms of the Conditional Waiver and Release prohibit: reviving or reinitiating the statute of limitations. This contention therefore does not unsettle our conclusion regarding the timeliness of King's claim for benefits.

**ii.**

Next, King argues that the district court erred in rejecting his claim asserting that Unum deprived him of his procedural rights under 29 U.S.C. §

10

No. 11-10397

1133. He specifically contends that this deprivation took place when he was initially denied benefits.

The statutory provision King relies upon provides:

In accordance with regulations of the Secretary, every employee benefit plan shall–

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. "Failure to fulfill procedural requirements generally does not give rise to a substantive damage remedy." *Hines v. Mass. Mut. Life Ins., Co.*, 43 F.3d 207, 211 (5th Cir. 1995). Remand to the plan administrator for full and fair review of a plaintiff's claims is usually the appropriate remedy when the administrator fails to substantially comply with ERISA's procedural requirements. *Lafleur*, 563 F.3d at 158. Here, even if we were to assume, purely for the sake of argument, that a procedural violation took place during the initial denial of disability benefits, any claim arising out of such a violation would be time barred because the underlying substantive claim for benefits is itself untimely. Since his presentation of a procedural violation is untimely, the district court did not err in granting Unum's motion for summary judgment on his Section 1133 claim.[2]

---

[2] In his original complaint, King asked that Unum be required to pay statutory penalties because of alleged violations of 29 U.S.C. § 1132(c)(1). Although the district court rejected this claim, he has not briefed the issue on appeal. We therefore consider it abandoned. *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 610 (5th Cir. 2011) (noting that an appellant abandons all issues not raised and argued in his initial brief on appeal).

No. 11-10397

## III.

Finding no error in the district court's judgment, we AFFIRM.