**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**April 9, 2004**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 02-20966
_____

GENA BAKER, Individually and as
Executor of the Estate of Keith Baker;
BURLINGTON RESOURCES INC.,

                              Plaintiffs - Appellants,

                    versus

METROPOLITAN LIFE INSURANCE COMPANY,

                              Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before JOLLY, WIENER, and BARKSDALE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This ERISA case presents an appeal of a denial of benefits claimed by Gena Baker under a life insurance policy covering her deceased husband, Keith Baker.  Gena Baker and Burlington Resources Inc., Keith Baker's employer (who paid the benefits to Gena Baker acquiring her right to the proceeds of this action), sued Metropolitan Life Insurance Company for these life insurance benefits.  The complaint also alleged state law claims for breach of contract and violations of TEX. INS. CODE ANN. art. 21.21 et seq.

and TEX. BUS. & COM. CODE ANN. § 17.46 et seq.[1]  The district court granted summary judgment in favor of Metropolitan Life Insurance Co. and entered a final take-nothing judgment against Gena Baker and Burlington Resources Inc., disposing of their ERISA and state law claims.

This appeal requires us to determine the degree of deference the Plan insurer, Metropolitan Life Insurance Company, is required to give the named Plan administrator, Burlington Resources Inc., under the terms of the Metropolitan Life Plan.  However, this inquiry is substantially complicated by the fact that Mr. Baker made his benefits election before the Plan had become effective and died after the effective date of the Plan but before the Plan had actually been drafted.  Nevertheless, we hold that the district court was correct to uphold Metropolitan Life Insurance Company's denial of benefits under the Plan, but that it prematurely dismissed the state law claims.

I

A

Keith Baker was hired by Burlington Resources Inc. ("Burlington") on October 31, 1986.  He initially enrolled in

---

[1]Baker and Burlington's state law claims also included claims for fraud, negligent misrepresentation, unjust enrichment, breach of the duty of good faith and fair dealing, estoppel, and breach of fiduciary duty.  Additionally, they requested other state law relief including reformation, exemplary damages, and a declaratory judgment under the Texas Declaratory Judgment Act, TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 et seq.

2

Burlington's group life insurance plan ("Burlington Plan") and on November 2, 1997, elected to receive both basic and supplemental life insurance benefits equal to one-time his annual salary in basic benefits and one-time his annual salary in supplemental benefits. In 1997 Burlington acquired the Louisiana Land and Exploration Company, which had its own employee benefit plan. Burlington sought an insurer that would take over its parallel benefit programs as a new uniform program to cover all employees. To this end, in April 1998, Burlington directed its agent and broker, William Mercer, Inc., to submit a Request for Proposal to numerous life insurance companies, including Metropolitan Life Insurance Company ("MetLife"), inviting them to bid on Burlington's life insurance program.

In the meantime, Mr. Baker's health was deteriorating. On October 15, 1998, he left work after developing skin cancer and on October 19, 1998, he was classified by Burlington as short-term disabled. After he went on short-term disability, enrollment notices were sent by Burlington to all "active" employees to allow them to enroll in the new MetLife benefits Plan.[2] Mr. Baker's name was carried on Burlington's list of active employees and Burlington sent him an enrollment notice. Burlington employees who received this notice were allowed to increase their life insurance coverage

---

[2]It is unclear who deemed employees to be "active" for the purposes of this initial enrollment. However, Burlington had consistently considered short-term disabled individuals to be active, but not long-term disabled individuals.

3

during the initial enrollment period. Consequently, on November 5, 1998, Mr. Baker called Burlington's human resources department and increased his life insurance coverage to six-times his annual salary.[3] He was sent a letter by Burlington confirming this election, but the letter noted that any change in benefits would not become effective until January, 1, 1999, the date the Plan would become effective.

Mr. Baker never returned to work. He died on January 15, 1999. At the time of his death, the final MetLife Plan had not been completed. The Plan was not finalized until October 1999, and its effective date was made retroactive to January 1, 1999. The beneficiary of Mr. Baker's life insurance policy, his wife Gena Baker ("Baker"), submitted a claim for $757,080 -- six-times Mr. Baker's salary.[4] MetLife paid her $126,180 -- one-time Mr. Baker's salary – but refused to pay the additional $630,900.[5] In March

---

[3]Baker elected both Basic and Supplemental Life Insurance equal to three-times his annual salary or a total of six-times his annual salary.

[4]As discussed infra, to is not clear whether Mrs. Baker's claim was first submitted to Burlington or MetLife. Based upon our discussion infra, however, our resolution of this appeal is not affected by this discrepancy.

[5]As previously noted, Mr. Baker initially enrolled in the Burlington Plan and on November 2, 1997, elected to receive both basic and supplemental life insurance benefits equal to one-time his annual salary in basic benefits and one-time his annual salary in supplemental benefits. MetLife did not pay the supplemental benefits under the Burlington Plan, contending that Mr. Baker had failed to qualify for these benefits as well. This determination does not appear to be contested; however, to the extent that it is contested it has been abandoned as inadequately briefed. See FED.

4

2000, Burlington gave Mrs. Baker a nonrecourse loan for the amount alleged to be due under the Plan and Baker assigned the proceeds of her causes of action to Burlington.

B

On April 25, 2001, Burlington and Baker filed this suit asserting ERISA and state law claims. The district court ordered the parties to submit an agreed chronology and a "binder of not more than twelve documents showing the evolution of their arrangement through January 15, 1999" and provided that "[t]he parties have through September 21, 2001 to move for judgment as a matter of law on what the plan says."

Both parties then filed cross-motions for summary judgment. The district court held that "[t]he beneficiary is bound by the plan as it ultimately existed or by the plan before the switch, and in neither case was the participant allowed unilaterally to increase his life coverage to six times his salary while on leave with a terminal illness." The district court reasoned that such an increase was not allowed because Baker was not actively at work when he made this election and did not return to active service before his death. The court reasoned that Mr. Baker could not have been actively at work in November 1998 because he was known to have been terminally ill. Moreover, even if he were deemed actively at work at this time, he would have been eligible only to continue his

R. App. P. 28(a)(9)(A); L & A Contracting Co. v. Southern Concrete Servs., 17 F.3d 106, 113 (5th Cir. 1994).

5

benefits under the October 1999 Plan, and not to increase them. Second, the district court held that Mr. Baker was ineligible to increase his life insurance benefits because he had not provided proof of insurability. The court concluded by noting that all parties -- the employer, insurer and participant -- are all bound by the Plan, not preliminary negotiations, and the Plan did not allow Mr. Baker to increase his life insurance benefits. Finally, the court made a common-sense observation that "[n]o fully-informed disinterested person would expect an insurance company to allow a terminally ill participant to increase his life insurance coverage."[6] Accordingly, the district court entered a take-nothing judgment in favor of MetLife disposing of Burlington and Baker's ERISA and state law claims.

                                II

This appeal challenges the district court's grant of summary judgment in favor of MetLife upholding MetLife's decision denying Baker's claim for benefits under the Plan and holding that Burlington's state law claims are preempted by ERISA.

This Court reviews summary judgments de novo, applying the same standards applied by the district court. Performance Autoplex

---

[6]Burlington challenges this conclusion as erroneous (because there is nothing in the record regarding the seriousness of Mr. Baker's condition) and MetLife does not seem to dispute that contention. However, our disposition of this case obviates the need for us to pass on the alleged error of the district court's conclusion.

II Ltd. v. Mid-Continent Casualty Co., 322 F.3d 847, 853 (5th Cir. 2003).   A grant of summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.   Id.; FED. R. CIV. P. 56(c).   In evaluating the existence of a genuine issue of material fact, we review the evidence and inferences drawn from that evidence in the light most favorable to the non-moving party.  Daniels v. City of Arlington, Tex., 246 F.3d 500, 502 (5th Cir. 2001).

III

"Any review of an ERISA benefit determination must begin with the relevant plan language."   Aboul-Fetouh v. Employee Benefits Committee, 245 F.3d 465, 468 (5th Cir. 2001).   First we will evaluate the terms of the Plan as they relate to Mr. Baker and then we will turn to evaluate the relationship between Burlington and MetLife under the Plan.[7]

The Plan -- completed in October 1999, approximately ten months after Mr. Baker's death -- indicates that Mr. Baker failed to meet the eligibility requirements for the increased benefits because he was not actively at work when he increased his benefits. The MetLife Plan provides:

> If you make a request to be covered for Personal Benefits during the first annual enrollment period in which you can elect

---

[7]Because by its terms Mr. Baker's November 1998 enrollment did not become effective until the Plan became effective on January 1, 1999, we will not discuss the Burlington Plan in existence before January 1, 1999.

> coverage, your Personal Benefits will become effective on the first day of the calendar year following the annual enrollment period, subject to the Active Work Requirement.

Mr. Baker enrolled in "in the first annual enrollment period in which [he could] elect coverage" -- November 1998 -- and his benefits should have "become effective on the first day of the calendar year following the annual enrollment period" -- January 1, 1999 -- provided that the Active Work requirement was met.

The Active Work Requirement provides:

> You must be Actively at Work in order for your Personal Benefits to become effective. If you are not Actively at Work on the date when your Personal Benefits would otherwise become effective, your Personal Benefits will become effective on the first day after you return to Active Work.

Mr. Baker's entitlement to benefits thus turns on whether he was actively at work on January 1, 1999 or sometime thereafter. The Plan defines active work as "performing all of the material duties of your job with the Employer where these duties are normally carried out." Mr. Baker was on short-term disability and not attending work on January 1, 1999. Under the terms of the Plan, he was not "actively at work" on that date. Accordingly, his increased benefits never became effective under the MetLife Plan unless the Plan includes some exception to the Active Work requirement applicable to Mr. Baker.

Burlington argues that it was permitted to deem Mr. Baker "active" and to allow him to increase his benefits under the Plan.

8

This contention is not supported by the language of the Plan, which only provides: "If you are not Actively at Work as an Employee because of a situation set forth below, the Employer may deem you to be in Active Work as an Employee ... in order that certain benefits under This Plan may be continued."[8]  In this case the only dispute centers around whether Mr. Baker's benefits may be increased; this provision does not allow Burlington to deem Baker to be active for the purpose of increasing his benefits under the Plan.

In addition to the Active Work requirement, the Plan requires participants in certain situations to provide proof of good health. Pertinent to Mr. Baker, the Plan explicitly provides:

> If you make a request, during an annual enrollment period, to increase your Basic Life and Optional Life Benefits to an option of the Plan providing more than the next higher level of benefits, you must give us evidence of your good health.

Mr. Baker provided no certificate of health when he increased both his basic and supplemental life insurance benefits by more than one level, which also precludes his recovery under the Plan.

IV

Although ERISA authorizes a district court to review denials of claims (29 U.S.C. § 1132(a)(1)(B)), the statute does not specify the appropriate standard of review.  Vega v. Nat'l Life Ins. Serv.

---

[8] The Plan sets forth sickness, injury or leave of absence for a period of no longer than three months as situations where the employee can be deemed active.

<u>Co.</u>, 188 F.3d 287, 295 (5th Cir. 1999)(en banc). Our cases, however, make clear that "when an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion." <u>Id.</u> at 295; <u>see</u> <u>also</u> <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989).[9]

This deferential standard is recognized by the Plan, which provides that:

> In carrying out their respective responsibilities under the Plan, the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. <u>Any</u> interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

(Emphasis added).[10]

---

[9]Although the Plan describes this deferential standard of review as arbitrary and capricious, we "detect only a semantic, not a substantive, difference" between it and <u>Firestone</u>'s "abuse of discretion" standard. <u>Wildbur v. ARCO Chemical Co.</u>, 974 F.2d 631, 635 n.7 (5th Cir. 1992).

[10]This paragraph indicates that MetLife, which was reviewing Burlington's decision, was required to accept Burlington's decision unless it was arbitrary and capricious. Although in this appeal we review MetLife's decision denying the benefits, as a practical matter we are determining whether Burlington's decision granting the benefits was arbitrary and capricious.

Moreover, we recognize that because MetLife "potentially benefits from every denied claim," its decision is accorded "less than full deference." <u>Gooden v. Provident Life & Acc. Ins. Co.</u>, 250 F.3d 329, 333 (5th Cir. 2001) (quoting <u>Vega</u>, 188 F.3d at 295); <u>see</u> <u>also</u> <u>Vega</u>, 188 F.3d at 299; <u>Bratton v. Nat'l Union Fire Ins. Co.</u>, 215 F.3d 516, 521 n.4 (5th Cir. 2000) (describing a "sliding

10

Although we suggested in <u>Wildbur v. ARCO Chem. Co.</u>, 974 F.2d 631, 337 (5th Cir. 1992), that evaluating an administrator or fiduciary's denial of benefits under the abuse of discretion standard may be a two-step process, and although this two-step process has been followed in several cases for which such analysis was appropriate, <u>see</u>, <u>e.g.</u>, <u>Abraham v. Exxon Corp.</u>, 85 F.3d 1126, 1131 (5th Cir. 1996); <u>Pickrom v. Belger Cartage Serv.</u>, 57 F.3d 468, 471 (5th Cir. 1995), we have also made clear that this two-step analysis is not applicable in every case. <u>Duhon v. Texaco, Inc.</u>, 15 F.3d 1302, 1307 n.3 (5th Cir. 1994).[11]  For example, if the administrator's interpretation and application of the Plan is legally correct, then our inquiry ends because obviously no abuse of discretion has occurred. <u>See</u> <u>Spacek v. Maritime Ass'n</u>, 134 F.3d 283, 292 (5th Cir. 1998).  Furthermore, "if an administrator interprets an ERISA plan in a manner that directly contradicts the plain meaning of the plan language, the administrator has abused his discretion even if there is neither evidence of bad faith nor of a violation of any relevant administrative regulations."

---

scale" approach to be employed in case where the administrator has conflicted interests, "giving less deference to the administrator in proportion to the administrator's apparent conflict").

[11]In <u>Wildbur</u> this court described this two step process as requiring a court to first determine the whether the administrator gave the plan a legally correct interpretation and, if not, whether the administrator's decision was an abuse of discretion. <u>Wildbur</u>, 974 F.3d at 637.

11

Gosselink v. AT&T, Inc., 272 F.3d 722, 727 (5th Cir. 2001); see also Wilbdur, 974 F.2d at 638.

The application here of these otherwise intelligible principles is somewhat confused by the fact that MetLife, as an insurer, is a Plan fiduciary and is also entitled to exercise discretionary authority under the Plan.[12]

A

Thus, our next step in resolving this appeal is to determine what effect, if any, Burlington's decision approving Baker's claim for benefits must be given under the Plan.[13] MetLife is required by the Plan to give Burlington's discretionary decision approving

---

[12]Although Burlington is designated by the Plan as administrator, it is not disputed that MetLife is a Plan fiduciary and is also afforded discretionary authority under the Plan. In its brief Burlington states that "[t]he determinations of MetLife, as a Plan fiduciary, are entitled to much less deference" than the decisions of Burlington. Moreover, under ERISA, "a person is a fiduciary with respect to a plan to the extent ... he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A) (2003) (emphasis added). MetLife clearly possesses discretionary authority under the Plan and is properly considered a Plan fiduciary. See infra note 14.

[13]Once again, we note that the record is unclear regarding the precise claims process. Burlington contends that Mrs. Baker submitted her claim to Burlington, which approved it, and forwarded it to MetLife for payment. This interpretation is perhaps consistent with the Plan that requires beneficiaries to submit the claims to Burlington "who will then certify that [they] are insured under the Plan and will then forward the claim form" to MetLife. MetLife, however, argues that under the Plan it is entitled to review all submitted claims and make its own independent eligibility determination. For the purposes of this appeal, we need not resolve this dispute and will assume that Burlington's contentions are correct.

Baker's claim full force and effect as long as that decision is not arbitrary and capricious. See supra note 10; see also 29 U.S.C. § 1104(a)(1)(D) (requiring a fiduciary to discharge his duties "in accordance with the documents and instruments governing the plan").

Burlington contends that its decision is not arbitrary and capricious -- and entitled to full force and effect under the Plan -- because, it argues, Mr. Baker's claim involves two distinct agreements: "one regarding the initial open enrollment period and one governing the parties' obligations on a going forward basis, after the initial enrollment period" -- i.e., the Plan. As already discussed, Mr. Baker's increased benefits never became effective under the Plan; thus, any entitlement to benefits must originate in the asserted collateral agreement governing the initial enrollment period.

Burlington contends that this collateral agreement is embodied in an e-mail sent by MetLife on August 7, 1998, which stated:

> For employees currently covered for either Basic or Optional Life, we will allow an increase of one level (1 X Salary) without having to provide a statement of health. The only exception to this [one-level increase limit] rule is for this enrollment where we will allow current employees who have less than 3 X Salary to increase coverage to 3 X salary without providing a statement of health.

According to Burlington, this e-mail waived all requirements -- Active Work and Proof of Health -- and allowed Mr. Baker to increase his benefits to three times his salary. Burlington

13

contends that this collateral agreement supports its decision approving Baker's benefits and its decision is, therefore, not arbitrary and capricious and entitled to full force and effect.

Assuming that Burlington is correct about the ultimate legal effect of this correspondence, it is clear that Burlington's interpretation of this correspondence is not entitled to deference under the Plan. Under the Plan, the only determinations entitled to deference are those "made pursuant to [Burlington's] discretionary authority" and the Plan only gives Burlington the discretionary authority to "determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan" (emphasis added).

As discussed above, Mr. Baker's benefits increase was never given effect under the Plan. Moreover, even if Baker's increased benefits are effective under the collateral agreement -- and we do not judge that claim today -- Burlington's consideration of that agreement in approving Baker's claim exceeded its discretionary authority under the Plan. Thus, Burlington's resort to an agreement extraneous to the Plan and its determination that Baker was entitled to the increased benefits are in direct conflict with the terms of the Plan; as such, Burlington's decision is arbitrary and capricious and not entitled to "full force and effect" under the Plan. See Gosselink, 272 F.3d at 727; see also Wildbur, 974 F.2d at 638 (stating that an interpretation in direct conflict with

14

the explicit language of the Plan indicates that the interpretation is arbitrary and capricious).

B

Having decided that the Plan did not require MetLife to give Burlington's interpretation of the Plan full force and effect, we are now required to determine if MetLife's denial of Baker's claim for benefits was an abuse of discretion.  As noted above, because MetLife is the insurer of the Plan, we will review its denial of benefits with less than full deference.  See supra note 10.

Because we have already determined that Mr. Baker's election to increase his benefits during the initial enrollment period never became effective under the terms of the Plan, MetLife's decision denying those benefits is legally correct and does not constitute an abuse of discretion.  See Spacek v. Maritime Ass'n, 134 F.3d 283, 292 (5th Cir. 1998).  Accordingly, the district court's entry of a take-nothing judgment against Burlington and Baker with respect to their ERISA claims is AFFIRMED.[14]

V

_____

[14]When the Plan speaks specifically of a review of Burlington's decision, it only says that a beneficiary may seek review of a claim denied by Burlington.  When, however, the Plan is construed as a whole in the light of its other provisions, the Plan cannot be read as restricting MetLife's authority to interpret the Plan in cases such as the instant one.  The fact that the Plan provides for appeal of a denial of a claim to MetLife does not negate the fact that the Plan grants MetLife administrative authority, as Plan fiduciary, to "interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits".

15

We now turn to address the district court's holding that Burlington's state law claims are preempted by ERISA. As discussed above, the district court directed that "[t]he parties have through September 21, 2001 to move for judgment as a matter of law on <u>what the plan says</u>" (emphasis added). In compliance with this command, Burlington and MetLife submitted summary judgment motions and limited their respective arguments to the meaning of the Plan.

The district court, however, without the benefit of any briefing by the parties, held that "[b]ecause this benefit arises in an employee plan, the claims beyond seeking the correct benefit are vacuous." Particularly in the light of our opinion today, which leaves open any claim Burlington may have on the pre-Plan correspondence and negotiations, this conclusion does not seem so certain.

Moreover, "a district court may not grant summary judgment <u>sua sponte</u> on grounds not requested by the moving party." <u>John Deere Co. v. American Nat'l Bank</u>, 809 F.2d 1190, 1192 (5th Cir. 1987); FED. R. CIV. P. 56. In the instant case, in compliance with the district court's command, neither party sought summary judgment on Burlington's state law claims and the district court's holding that they were preempted was, therefore, premature. Accordingly, the district court's grant of summary judgment with respect to Burlington and Baker's state law claims is VACATED, and those claims are REMANDED for further proceedings.

VI

16

Based on the above, the district court's entry of a take-nothing judgment in favor of MetLife is AFFIRMED with respect to Burlington and Baker's ERISA claims and VACATED and REMANDED with respect to their state law claims.

AFFIRMED in part; VACATED and REMANDED in part.

WIENER, Circuit Judge, specially concurring:

I concur with the Court's decision and write separately only to clarify two points that I believe deserve further amplification to assist future courts in reviewing claims for denial of ERISA benefits.

**A.    The "Direct-Contradiction Exception" to the <u>Wildbur</u> Two-Step Framework**

As the panel opinion recognizes,[15] we announced in <u>Wildbur v. ARCO Chem. Co.</u> the two-step test that courts in our circuit should employ when analyzing a challenge to the denial of ERISA benefits by a plan administrator vested with broad discretion to interpret and apply the plan.[16]  Under <u>Wildbur</u>, the court first must decide whether the plan administrator's interpretation of the plan is legally correct. If it is, the inquiry ends because no abuse of discretion could have occurred; but if the administrator's determination is found not to be legally correct, the court must determine whether the administrator's legally incorrect decision also rose to the level of abuse of discretion,[17] which in this context is equivalent to an "arbitrary and capricious" decision.[18]

---

[15] <u>See</u> Maj. Op. at _____ & n.11.

[16] 974 F.2d 631, 637-638 (5th Cir. 1992).

[17] <u>Id.</u>

[18] <u>See</u> Maj. Op. at _____ n.9.

18

Although it is true that reviewing courts are not "rigidly confined" to the <u>Wildbur</u> test in every case,[19] that framework —— calculated to ensure that proper deference is accorded to a plan administrator's interpretation and application of an ERISA plan —— should be used by reviewing courts unless compelling circumstances justify a departure. The purpose of this two-step analysis is to minimize judicial intrusion into the ERISA plan administration process and to manage the often-competing interests and constituencies involved in ERISA plans.

Today's panel opinion, however, employs a method that is an <u>exception</u> to the <u>Wildbur</u> framework and concludes that Burlington reached an interpretation that was not merely "legally incorrect," but did so "in a manner that <u>directly contradicts</u> the plain meaning of the plan language."[20] Our post-<u>Wildbur</u> jurisprudence recognizes that in the exceptional instance when the plan administrator's decision is such a direct contradiction of the plan's plain language that there is no room to support the plan administrator's discretionary interpretation, a reviewing court can short-circuit the <u>Wildbur</u> process and refuse to give any effect to the plan

---

[19] <u>Duhon v. Texaco, Inc.</u>, 15 F.3d 1302, 1307 n.3 (5th Cir. 1994) (relying on <u>Wildbur</u>'s notation that "[a]pplication of the abuse of discretion standard <u>may</u> involve [the] two-step process." (quoting <u>Wildbur</u>, 974 F.2d at 637 (adding emphasis))). <u>Accord</u> <u>Gosselink v. AT&T, Inc.</u>, 272 F.3d 722, 727 (5th Cir. 2001); <u>Threadgill v. Prudential Securities Group, Inc.</u>, 145 F.3d 286, 292 n.12 (5th Cir. 1998).

[20] <u>Gosselink</u>, 272 F.3d at 727 (emphasis added).

administrator's interpretation.[21]  This is not only efficient but also avoids reaching "the anomalous finding that a Plan administrator's interpretation which directly violates the plain meaning of the plan language is not an abuse of discretion simply because the plan language has always been interpreted in the same manner and there are no inferences of bad faith."[22]

For the reasons already stated in the panel opinion,[23] this exception — which clearly constitutes a substantial departure from the well-established base rule of Wildbur — is warranted on the unique facts of this case in light of the language of the ERISA plan here at issue.  I write separately to emphasize that courts should be chary about resorting to application of this direct-contradiction exception to the Wildbur framework: Just because a court disagrees with the plan administrator's interpretation of the plan by finding it legally incorrect does not necessarily mean that the administrator has been arbitrary or capricious.

**B.    Choosing Between Two ERISA Entities Entitled to Exercise Discretionary Authority under the Plan**

---

[21] Id.

[22] Id.

[23] Maj. Op. at ____ ("Burlington's resort to an agreement extraneous to the Plan and its determination that Baker was entitled to the increased benefits are in direct conflict with the terms of the Plan.").

Although the _Wildbur_ framework and the direct-contradiction exception to it that we employ today are relatively straightforward, this case poses an additional question, because the plan at issue extends discretionary authority to interpret the plan to _two_ ERISA entities —— the plan administrator (Burlington) and another plan fiduciary (MetLife).[24] On the peculiar facts of this case, the task of selecting between competing interpretations by these two entities became a non-issue because the direct-contradiction exception to _Wildbur_ vitiates the need to accord _any_ deference to the interpretation by Burlington as plan administrator. If, however, we had merely determined that Burlington's interpretation was legally incorrect but _not_ arbitrary or capricious, we would have been required to defer to Burlington and credit its interpretation over MetLife's for two reasons. First, when an ERISA plan administrator has discretionary authority concerning the decision at issue, we presume that the administrator's interpretation of the plan is correct _unless_ the presumption is overcome under the _Wildbur_ test. The second reason that Burlington's interpretation would have trumped MetLife's is that, under _Vega v. Nat'l Life Ins. Svcs. Co._,[25] Burlington did not

---

[24] Maj. Op. at _____ n.12.

[25] 188 F.3d 287, 297 (5th Cir. 1999) (en banc) ("[W]e reaffirm today that our approach to this kind of case is the sliding scale standard articulated in _Wildbur_. The existence of a conflict is a factor to be considered in determining whether the administrator abused its discretion in denying a claim. The greater the evidence of conflict on the part of the administrator, the less deferential

21

labor under a conflict of interest whereas because MetLife "potentially benefits from every denied claim," its decision would have been entitled to "less than full deference."[26] Thus, had we been forced to choose between an unconflicted plan administrator and a _Vega_-conflicted plan fiduciary, we would have been constrained to defer to the administrator.

To summarize, I concur specially only to expand our guidance on two points: First, the direct-contradiction exception to application of the two-step _Wildbur_ framework should be used by reviewing courts sparingly and with restraint. Second, when a reviewing court must choose between, on the one hand, an interpretation made by an unconflicted plan administrator that is legally incorrect but is not arbitrary or capricious, and, on the other hand, an interpretation made by a _Vega_-conflicted plan fiduciary, the court must side with the plan administrator.

---

our abuse of discretion standard will be."). See also _Wildbur_, 974 F.2d at 638-42 (5th Cir. 1992) ("We note that the arbitrary and capricious standard may be a range, not a point. There may be in effect a sliding scale of judicial review of trustees' decisions―more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion is....").

[26] Maj. Op. at ___ n.10.