# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 5, 2012

No. 10-60962

Lyle W. Cayce
Clerk

HOSEY FLEMING,

Plaintiff - Appellant

v.

TUNICA COUNTY MISSISSIPPI; K.C. HAMP, individually and in his official capacity as the Sheriff of Tunica County; CHARLIE WRIGHT, individually and in his official capacity as a Deputy Sheriff of Tunica County, Mississippi,

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 2:09-cv-11

Before DENNIS, CLEMENT, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

This case involves plaintiff Hosey Fleming's unlawful incarceration in the Tunica County, Mississippi jail for four months, two weeks, and three days after the state court suspended his prison sentence and instead placed him on probation. Fleming brought suit under 42 U.S.C. § 1983 and the Mississippi Tort Claims Act, MISS. CODE ANN. §§ 11-46-1 to -23, against Tunica County,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-60962

Sheriff K.C. Hamp, and Deputy Sheriff Charlie Wright.   The district court granted summary judgment for the defendants on all of Fleming's claims.

For the following reasons, we REVERSE the grant of summary judgment on Fleming's § 1983 claim against the County; AFFIRM the grant of summary judgment on Fleming's § 1983 claims against Sheriff Hamp and Deputy Sheriff Wright in their individual capacities; and AFFIRM the dismissal of Fleming's Mississippi Tort Claims Act claim against the County.

## BACKGROUND

Fleming was arrested in July 2007 and charged with stealing $82.75 worth of quarters from a casino slot machine in violation of the Mississippi Gaming Control Act.  *See* MISS. CODE ANN. §§ 75-76-301(c).  Fleming remained in Tunica County jail until October 15, 2007, when he pleaded guilty to the charge in state court.  At the same proceeding, the state court sentenced Fleming to one year in prison, but then suspended his prison sentence and instead placed him on supervised probation, subject to certain terms and conditions.  Deputy Sheriff Wright transported Fleming from the jail to the court proceeding and back.  The suspension of Fleming's sentence and his probation conditions are detailed in the court's "Sentencing Judgment," dated October 15, 2007.  On October 18, 2007, the clerk of the state court certified that the sentencing judgment had been recorded.   On October 24, 2007, the clerk of the state court notified the Mississippi Department of Corrections of its judgment in Fleming's case.  However, Fleming was not released from Tunica County Jail until March 3, 2008, when he was visited by a parole officer from the Mississippi Department of Corrections (MDOC).  On October 23, 2008, the state court issued an order closing the case because Fleming's one-year probation period had ended.  That order reiterated that on October 15, 2007, Fleming's one-year sentence had been suspended and Fleming had instead been placed on one year of supervised probation.

2

No. 10-60962

Fleming subsequently filed suit in federal district court against a number of county and state defendants. The state defendants are not involved in this appeal. For the purpose of his § 1983 claims, Fleming sued Tunica County and Sheriff Hamp in his official capacity;[1] as well as Sheriff Hamp and Deputy Sheriff Wright in their individual capacities. For the purpose of his Mississippi Tort Claims Act claim, Fleming sued the County as well as Sheriff Hamp and Deputy Sheriff Wright in their official capacities.[2]

The county defendants filed a motion for the district court to either dismiss the suit for failure to state a claim, or grant summary judgment in their favor. The district court granted summary judgment for the defendants. *Fleming v. Tunica Cnty.*, No. 2:09-cv-11, 2010 WL 4876690 (N.D. Miss. Nov. 23, 2010). Regarding Fleming's § 1983 claims, the district court agreed with the county defendants that they were not liable for any violation of Fleming's liberty interests, because "on[c]e Fleming pled guilty on October 15, 2007, his status changed as from that of a pretrial detainee in the custody of Tunica County to that of a state inmate awaiting processing." *Id.* at *3. Thus, the district court concluded that because no county defendant had violated Fleming's constitutional rights, the county defendants were entitled to summary judgment. *Id.* at *3-4. The district court also concluded that insofar as Fleming was arguing that a violation of his rights resulted from Sheriff Hamp's or Deputy Sheriff Wright's "failure to train or supervise [a] subordinate," the record did not "demonstrate a genuine issue of material fact" regarding such a claim. *Id.* at *3 n.5. Finally, the district court dismissed Fleming's state law claim against the

---

[1] Since "a suit against [an individual government official] in his official capacity is a suit against the [municipality]," *Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 392 (5th Cir. 2000), we simply refer to this claim as being one against the County.

[2] As with § 1983 cases, a suit under the Mississippi Tort Claims Act against a government employee in his official capacity is the same as a lawsuit against the government entity. *See City of Jackson v. Harris*, 44 So. 3d 927, 928 n.1 (Miss. 2010).

No. 10-60962

County, reasoning that the Mississippi Tort Claims Act provided the County with immunity against liability for the kind of claim that Fleming brought. *Id.* at *4.

Fleming filed a timely appeal.

## STANDARD OF REVIEW

"This Court reviews a district court's grant of summary judgment *de novo*, using the same standard as that applied by the district court." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 380 (5th Cir. 2010). Summary judgment should be granted by the court "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The evidence should be viewed "in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor." *Sanders-Burns*, 594 F.3d at 380 (quoting *Riverwood Int'l Corp. v. Employers Ins. of Wasau*, 420 F.3d 378, 382 (5th Cir. 2005)).

## ANALYSIS

### I.    Section 1983 claims

"Section 1983 provides a cause of action for persons who have been 'depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws' of the United States by the actions of a person or entity operating under color of state law." *Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010) (alteration in original) (quoting 42 U.S.C. § 1983). Here, Fleming's claim is that he was deprived of his constitutional rights by the county defendants when he was unlawfully incarcerated beyond the authorized period in Tunica County jail.

This court has recognized a due process right to timely release from incarceration such that, for example, "[d]etention of a prisoner for over 'thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process.'" *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (quoting *Douthit v. Jones*, 619 F.2d 527, 532 (5th

No. 10-60962

Cir. 1980)); *id.* (stating that "[t]here is a [c]learly [e]stablished [r]ight to [t]imely [r]elease from [p]rison"); *see also Terry v. Hubert*, 609 F.3d 757, 763 (5th Cir. 2010) ("[T]he due process clause is implicated in cases of continued incarceration . . . beyond the term of a court-ordered sentence[] . . . ."). The more than four months that Fleming was incarcerated beyond the term of his court-ordered sentence thus clearly implicate the due process clause under our precedent. In view of the constitutional right at issue, we turn to each of Fleming's § 1983 claims.

## A.    The County

We first address Fleming's municipal liability claims against the County. "To hold a municipality liable under § 1983 for the misconduct of an employee, a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the municipality's policymaker was the moving force behind, or actual cause of, the constitutional injury." *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009). "To serve as a basis for § 1983 liability, the failure to promulgate municipal policy must amount to 'an intentional choice, not merely an unintentionally negligent oversight.'" *Evans v. City of Marlin*, 986 F.2d 104, 108 (5th Cir. 1993) (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)). "A failure to adopt a policy rises to the level of deliberate indifference 'when it is obvious that the likely consequences of not adopting a policy will be a deprivation of civil rights.'" *Id.* (quoting *Rhyne*, 973 F.2d at 392). Similarly, while "alleg[ations] that [a municipality's] failure to provide training to municipal employees resulted in [a] constitutional deprivation . . . are cognizable under § 1983, they can only yield liability against a municipality where [its] failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989).

Fleming's amended complaint alleges that Sheriff Hamp, in his official capacity as county jailer, acted "intentional[ly]" and "in reckless disregard for

5

[Fleming's] constitutional rights" in "fail[ing] properly to train and supervise [its] . . . employees" and "fail[ing] to promulgate and implement proper policies to prevent the unlawful and unconstitutional detention of people who should be released from detention," and that, "[a]s a result . . . [Fleming] was deprived of his freedom" in violation of the Fourteenth Amendment. The only ground on which the County moved for summary judgment was that, as a matter of law, Fleming suffered no violation of his constitutional rights. The County did not argue to the district court that Sheriff Hamp had not acted with deliberate indifference as a policymaker in failing to implement policies to avoid unconstitutional detention or provide relevant training. When a defendant moves for summary judgment on the basis that one element of a plaintiff's claim is not satisfied, this court will reverse or affirm the district court's grant of summary judgment based only on whether there is a genuine issue of material fact with regard to that element, because courts "may not grant summary judgment *sua sponte* on grounds not requested by the moving party." *Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 632 (5th Cir. 2004) (quoting *John Deere Co. v. Am. Nat'l Bank*, 890 F.2d 1190, 1192 (5th Cir. 1987)) (citing FED. R. CIV. P. 56); *see* Fed. R. Civ. P. 56(f) (providing that a district court may "grant [summary judgment] on grounds not raised by a party" only "[a]fter giving notice and a reasonable time to respond"); *see also Washburn v. Harvey*, 504 F.3d 505, 509-10 (5th Cir. 2007) (reversing grant of summary judgment where a genuine issue of material of fact existed as to the second element of the plaintiff's prima facie Rehabilitation Act claim, because it was the only ground on which the defendant moved for summary judgment). "We do not consider whether [the plaintiff] has established the remaining . . . elements of" his claim. *Washburn*, 504 F.3d at 510.

Thus, the only question we consider as to the County is whether it has succeeded in showing that there exists no genuine issue of material fact as to

## No. 10-60962

whether Fleming suffered a violation of his constitutional rights, such that the County was entitled to judgment as a matter of law. We conclude that summary judgment was not warranted because, contrary to the district court's conclusion, the record does not demonstrate that there existed a legal basis for Fleming's continued detention after the state court suspended his sentence and instead placed him on probation. The County submits two unavailing arguments for why the present record demonstrates that there was no violation of Fleming's constitutional rights as a matter of law. We address each in turn.

First, the County argues that there were "conditions precedent" to Fleming's release that were not satisfied prior to March 3, 2008, and thus that it could not release him until then. The County cites the October 15, 2007 sentencing judgment in support. However, it is clear that none of the conditions listed in the judgment is a prerequisite to Fleming's release. Instead, they are simply requirements that Fleming was to be bound by while on probation.[3]

---

[3] That document states in relevant part:

Therefore, for said offense and on said plea of guilty, it is by the Court ORDERED AND ADJUDGED that the said <u>HOSEY FLEMING</u>, be and he is hereby sentenced to serve a term of <u>ONE (1)</u> <u>YEAR</u> in an institution under the supervision and control of the Mississippi Department of Corrections, and he/she [sic] is remanded into the custody of the Sheriff to await transportation.

Provided, however, on recommendation of the prosecuting attorneys, and that the ends of justice and the best interest of the public and Defendant will be best served, the Court hereby suspends the execution of the above sentence for a period of <u>ONE (1)</u> <u>YEAR</u>. And, the Defendant is hereby placed under the supervision of the Department of Corrections, until the Court in term time, or the Judge in vacation, shall alter, extend, terminate or direct the enforcement of the above sentence, and the suspension of said sentence is based upon the following conditions:

    (a)    Defendant shall hereafter commit no offense against the laws of this or any State of the United States or of the United States.

    (b)    Avoid injurious or vicious habits.

    (c)    Avoid persons and places of disreputable or harmful character.

    (d)    Report to the Department of Corrections, as directed

No. 10-60962

The County also cites the judgment to suggest that Fleming was "remanded into the custody of the Sheriff." The judgment did state that Fleming

---

by it.

(e)   Permit the Field Supervisor to visit him at home or
        elsewhere.

(f)   Work faithfully at suitable employment so far as
        possible.

(g)   Participate in the Mississippi Drug Identification
        Program.

(h)   Remain within the state of Mississippi unless
        authorized to leave on proper application therefor.

(i)   Support his dependents.

(j)   That I do hereby waive extradition to the State of Mississippi
        from any jurisdiction in or outside the United States where I may
        be found, and also agree that I will not contest any effort by any
        jurisdiction to return me to the State of Mississippi.

(k)   And further, that Defendant pay all court costs within 18 months;
        pay a supervisory fee each month to the Department of
        Corrections, and report to his Probation Officer immediately upon
        release from custody.

(l)   Pay the sum of $250.00 to the Clerk of this Court to be deposited
        to the general fund of TUNICA County, Mississippi, as a credit
        to indigent defense expense within 18 months from this date.

(m)   That the Defendant shall make full restitution to the
        victim(s) within 12 months of release or as otherwise ordered.

(n)   That the defendant has not made any false
        statements under oath at his "guilty plea' and/or
        "sentencing" hearings before this Court.

(o)   Defendant shall not own, possess or have under his control any
        firearm or other deadly weapon as outlined by Federal and State
        statutes.

IT IS FURTHERED ORDERED AS FOLLOWS:

1)   THAT THIS SENTENCE IMPOSED SHALL RUN
        CONSECUTIVE TO ANY AND ALL SENTENCES PREVIOUSLY
        IMPOSED.

2)   THAT THE DEFENDANT SHALL PAY A FINE OF ONE
        HUNDRED DOLLARS ($100.00) WITHIN 18 MONTHS FROM
        THIS DATE.

was "hereby sentenced to serve a term of <u>ONE (1) YEAR</u> . . . and . . . is remanded into the custody of the Sheriff to await transportation." But the next paragraph makes the court's intent unmistakeable: "[T]he Court hereby *suspends the execution of the above sentence* for a period of <u>ONE (1) YEAR</u>." (emphasis added).

The state court itself also confirmed that it had issued no requirements that had to be fulfilled before Fleming could be released. Fleming was sentenced at the same time as two other criminal defendants (who were being sentenced for unrelated offenses), both of whom were sentenced to prison terms. The state court explained that it would subject all three defendants to certain terms, which would constitute the terms of Fleming's probation, and the terms of the other defendants' post-release supervision. While explaining one such term, the court characterized the release of the other defendants as a future event, in contrast with Fleming's situation: "Participate in the Mississippi Drug Identification Program. That means *when you are released — or, Mr. Fleming, while you're on probation —* you'll be subject to being drug tested anytime the probation office wants to." (emphasis added). Similarly, in closing Fleming's case in October 2008, the state court reiterated that Fleming's prison sentence had been suspended and that he was on supervised release as of October 15, 2007. The document closing the case states: "The above Defendant, <u>HOSEY</u> <u>FLEMING</u>, was sentenced to <u>1</u> years [sic] in the custody of MDOC for the crime of <u>GAMING</u> <u>VIOLATION</u>, said sentence was suspended and the defendant was placed on <u>supervised</u> Probation for <u>1</u> years [sic] on the <u>15</u> day of <u>OCTOBER</u>, <u>2007</u>."

Additionally, the documents that Fleming signed on March 3, 2008, the day he was released, do not support the County's argument that Fleming should not have been released upon the state court's suspension of his sentence. The County contends that because Fleming signed a statement that day indicating that he "accept[ed] the above probation in accordance with the terms thereof," Fleming had to first sign the document before his probation would take effect.

9

No. 10-60962

However, nothing in the record indicates that the state court issued any such requirement.

The County also cites a document that Fleming signed on March 3, 2008, the "Detailed Release Sheet," for the proposition that he could not be released until his MDOC parole officer visited him in jail. This document states, "Reason for Release: RELEASE MDOC," and "Comments: RELEASE AUTHORIZED BY MDOC-MRS. MCGEE." But this document does not set forth any terms or conditions set by the state court, nor does it purport to represent the state court's orders. Rather, the document is one used by the Tunica County Sheriff's Office: just below the title "Detailed Release Sheet," the document states, "TUNICACOUNTY SHERIFF'SOFFICE [sic]." As described above, the transcript of Fleming's guilty plea and sentencing proceeding, his sentencing judgment, and the state court's order closing his case in October 2008 all indicate that the state court ordered that Fleming's sentence be suspended and he be placed on probation, with the expectation that the order would take effect immediately. The release sheet contains no indication that the state court required that Fleming be held until an MDOC official authorized his release.

In sum, the County was not entitled to summary judgment on the ground that there were unfulfilled "conditions precedent" that required the continued incarceration of Fleming.

Second, the County contends that Fleming suffered no violation of his right to timely release because once Fleming was placed on probation under the supervision of MDOC on October 15, 2007, the State of Mississippi, rather than the County, became responsible for him, including his continued incarceration. We disagree. Nothing in the record indicates that the State was involved in any way in Fleming's continued detention, or that the State requested that the County continue detaining him after his sentence was suspended.

10

Accordingly, we reverse the district court's grant of summary judgment to the County.

## B.    Sheriff Hamp and Deputy Sheriff Wright in their individual capacities

We next consider Fleming's argument that the district court erred in granting summary judgment on the basis of qualified immunity to Sheriff Hamp and Deputy Sheriff Wright, who were sued in their individual capacities.  In "resolving government officials' qualified immunity claims," we consider (1) "whether the facts that a plaintiff has alleged . . . or shown . . .make out a violation of a constitutional right"; and (2) "whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  We may exercise our "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236.

"A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (alteration in original) (quoting *Gates v. Tex. Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). "Liability for failure to promulgate policy and failure to train or supervise both require that the defendant have acted with deliberate indifference." *Id.* The *Porter* court explained that in assessing an assertion of qualified immunity in the context of a claim such as that here, "we must consider whether [the defendant's] actions were objectively unreasonable in light of the clearly established law that a prison official must ensure an inmate's timely release from prison and that such an official may be liable for failure to promulgate

policy or failure to train/supervise if he acted with deliberate indifference to constitutional rights." *Id.*

In their answer and motion for summary judgment, the county defendants asserted that "Sheriff Hamp is entitled to qualified immunity" because he "had no personal involvement [in Fleming's detention] and was not in direct supervision of the day to day operations of the Tunica County Detention Center." They asserted that Deputy Sheriff Wright "is also entitled to qualified immunity" because he "merely transported Fleming to Clarksdale, Mississippi, for a plea hearing and then returned him to the Tunica Detention Center to await processing."

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam). "Because qualified immunity constitutes an *immunity from suit* rather than a mere defense to liability, the defense is intended to give government officials a right not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery . . . as [i]nquiries of this kind can be peculiarly disruptive of effective government." *Id.* (alterations in original) (citations omitted). This court has also explained, though, that "qualified immunity does not shield government officials from all discovery but only from discovery which is either avoidable or overly broad." *Lion Boulos v. Wilson*, 834 F.2d 504, 507 (5th Cir. 1987); *accord Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995); *see also Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987) ("[I]f the actions [that a defendant official] claims he took are different from those the [plaintiff] allege[s] . . . then discovery may be necessary before [the official]'s motion for summary judgment on qualified immunity grounds can be resolved."). However, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable

for the harm [the plaintiff] has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, No. 11-40460, --- F.3d ----, 2012 WL 3517361, at *2 (5th Cir. Aug. 16, 2012).

Therefore, in order to determine whether the district court erred in granting summary judgment to the individual defendants, we must first determine whether the allegations in Fleming's complaint are sufficient to negate their assertions of qualified immunity. *See id.*; *Wicks*, 41 F.3d at 995. Negating qualified immunity "demands more than bald allegations and conclusionary statements." *Wicks*, 41 F.3d at 995. Fleming "must allege facts specifically focusing on the conduct of [the individual defendants] which caused his injury." *See id.*

In his amended complaint, Fleming alleges that Sheriff Hamp and Deputy Sheriff Wright "w[ere] involved in [Fleming's] unlawful detention . . . after [Fleming's] suspended sentence [was ordered] and knew, or should have known, that the detention was unlawful"; "possessed actual or constructive knowledge that [Fleming] was being held in confinement illegally"; "had a duty to insure that [Fleming] was not held in jail after his sentence was suspended[] and . . . failed to perform that duty"; "have a practice of recklessly detaining people unlawfully and unconstitutionally, including failing to release people in a timely manner"; "failed properly to train and supervise . . . officers and employees to insure that persons in custody are not detained unlawfully and unconstitutionally and are released in a timely manner"; and "failed to promulgate and implement proper policies to prevent" such unlawful detention.

These allegations are just as "broad and . . . conclusional" as those deemed insufficient to negate an assertion of qualified immunity in *Wicks*. 41 F.3d at 995-96; *see also id.* at 996 (holding allegations of race discrimination insufficiently specific to overcome assertion of qualified immunity where plaintiff alleged that "[employer] customarily and habitually treated black employees in

a less favorable fashion than white employees, and her adverse comments about [p]laintiff, based upon race and based upon [p]laintiff's protesting unjustified employment actions against him, was . . . a proximate cause of" an adverse employment decision).  As the *Wicks* court explained, "[t]o merely make the charge is insufficient; the complaint must 'state with factual detail and particularity the basis for the claim which necessarily includes why the defendant-official cannot successfully maintain the defense of immunity.'" *Id.* at 996; *see also id.* at 996 n.21 ("[A]llowing broadly-worded complaints, . . . which leaves to traditional pretrial depositions, interrogatories, and requests for admission the development of the real facts underlying the claim, effectively eviscerates important functions and protections of official immunity."). Fleming's amended complaint does no more than recite various legal theories upon which a jailer may be liable for unlawful detention under this court's precedents.  His pleadings' failure to allege the specific factual underpinnings of these legal conclusions is fatal in the face of the individual defendants' assertions of qualified immunity.

Accordingly, the district court did not err in granting summary judgment to Sheriff Hamp and Deputy Sheriff Wright.

## II.    Mississippi Tort Claims Act claim

The Mississippi Tort Claims Act permits lawsuits to be brought against employees of the state or any of its political subdivisions, including counties, based on "claims for money damages arising out of the torts of such governmental entities and the torts of their employees." MISS. CODE ANN. § 11-46-5(1).  However, the Act also exempts governmental entities and their employees "acting within the course and scope of their employment or duties" from liability for certain kinds of claims.  *Id.* § 11-46-9(1).  Relevant here, Mississippi Code § 11-46-9(1)(m) exempts governmental defendants from liability to "any claimant[,] who at the time the claim arises[,] is an inmate of

any detention center, jail, workhouse, penal farm, penitentiary or other such institution." *Id.* § 11-46-9(1)(m). We conclude that § 11-46-9(1)(m) applies in the instant case, and thus, that the district court did not err in dismissing Fleming's state law claim.

Fleming argues that § 11-46-9(1)(m) does not bar his claim because he had been ordered released by the state court at the time his claim arose, and therefore was not an "inmate" within the meaning of the statute. However, the plain language of § 11-46-9(1)(m) does not contemplate any distinction between inmates being detained pursuant to a lawful court order and unlawfully-held detainees, and the Mississippi courts have declined to read such a distinction into the statute. *Brooks v. Pennington*, 995 So. 2d 733, 737 (Miss. Ct. App. 2007) (en banc) (stating that "[s]ection 11-46-9(1)(m) does not distinguish between those lawfully and those unlawfully within the custody of the state"); *see also Bessent v. Clark*, 974 So. 2d 928, 930, 933 (Miss. Ct. App. 2007) (explaining that section 11-46-9(1)(m) "provides immunity to government entities and employees from claims of incarcerated individuals" and applying that provision to a prisoner's "false imprisonment" claim).[4]

Fleming argues that this case is like *Brooks*, in which the plaintiff was released after being placed on probation, having had the remainder of his sentence suspended. 995 So. 2d at 736. The plaintiff subsequently was wrongfully arrested by a bail bondsman and taken back to jail, where he was accepted and detained. *Id.* Although refusing to recognize a distinction between lawfully- and unlawfully-confined inmates, the *Brooks* court concluded that § 11-46-9(1)(m) did not apply in that case because the plaintiff was not actually

---

[4] Likewise, the Mississippi Supreme Court has defined an inmate, for the purposes of § 11-46-9(1)(m), "as 'a person confined to a prison, penitentiary or the like.'" *Wallace v. Town of Raleigh*, 815 So. 2d 1203, 1207 (Miss. 2002) (quoting BLACK'S LAW DICTIONARY 788 (6th ed.1990)). This definition of "inmate" does not distinguish those who are lawfully confined from those who are not.

confined when his claim arose. *Id.* at 737. Instead, the claim there arose "at the moment the . . . County deputy/jailor accepted custody of [the plaintiff] based on [the bondsman's] surrender of him." *Id.* Fleming argues that, similarly, his claim arose when he was "re-incarcerated" in Tunica County jail after being placed on probation. However, Fleming's situation is different from that of the plaintiff in *Brooks*, because unlike that plaintiff, Fleming was not actually released from custody once his sentence was suspended and he was placed on probation.

Rather, Fleming's situation is more analogous to that of the plaintiff in *Love v. Sunflower Cnty. Sheriff's Dep't*, 860 So. 2d 797 (Miss. 2003), in which the Mississippi Supreme Court held that the plaintiff was an "inmate" under § 11-46-9(1)(m), even though he was in the process of bonding out of jail when his claim arose. *Id.* at 800-01. Because "[t]he cold hard facts [we]re that until the money was paid and all paperwork complete, Love's release was not 'imminent,'" the court concluded that "[a]t the time of the incident in question, Love was an inmate of the Sunflower County Jail." *Id.* at 801. Here, Fleming was brought to state court for the October 15, 2007 proceeding from Tunica County Jail, where he was confined. Although the state court suspended Fleming's sentence and placed him on probation, it is undisputed that his paperwork was not processed and he had not actually been released at that time. Thus, Fleming's status as an "inmate" was unchanged.

We therefore conclude that § 11-46-9(1)(m) applies here, and affirm the district court's dismissal of Fleming's state law claim.

## CONCLUSION

For the foregoing reasons, we REVERSE the grant of summary judgment on Fleming's § 1983 claim against the County; AFFIRM the grant of summary judgment on Fleming's § 1983 claim against Sheriff Hamp and Deputy Sheriff Wright in their individual capacities; AFFIRM the dismissal of Fleming's

No. 10-60962

Mississippi Tort Claims Act claim against the County; and remand this case to the district court for further proceedings consistent with this opinion.